## CHRISTIERNSON v. HENDRIE & BOLTHOFF MFG. & SUPPLY CO.

Instruction permitting recovery for the breach of a warranty not alleged in the complaint were erroneous.

In an action for damages resulting from an alleged breach of warranty of machinery purchased by plaintiff, instructions permitting recovery for the breach of an implied warranty the nature and terms of which were not defined by the court, were erroneous.

Under the express provisions of Civ. Code, § 1323, a mere contract of sale does not imply a warranty except as prescribed by statute.

Where an engine was sold under an implied warranty that it was sound and merchantable, the measure of damages for breach of

the warranty was governed by Civ. Code, § 2305, providing that the damages are the excess, if any, of the value which the property would have had, at the time to which the warranty referred, if it had been complied with, over its actual value at that time; and hence, in an action for breach of such warranty in the sale of an engine, it was error to admit evidence of the loss of profits and to charge that if plaintiff did not know of the terms contained in a catalogue issued by defendant and providing that under no circumstances would the latter be responsible for any damages beyond the value of the goods, plaintiff might recover such amount as he was damaged by the defects in the engine.

(Opinion filed November 26, 1910.)

Appeal from Circuit Court, Pennington County. Hon. LEVI McGEE, Judge.

Action by W. E. Christiernson against the Hendrie & Bolthoff Manufacturing & Supply Company, a corporation. Judgment for plaintiff, and defendant appeals. Reversed, and new trial ordered.

*Charles W. Brown,* for appellant.

Who is a "managing agent" within the purview of the statute. The statutes contemplate a person invested with general powers, involving the exercise of judgment and discretion, and having some general control of the affairs of the corporation in the locality where his duties are performed. No matter how extensive an employe's duties may be, so long as they are performed under the eyes of the officers of the corporation, and pursuant to their instructions, he can not be regarded as the "managing agent" of the corporation. 19 Ency. Pl. & Pr., 662; Foster v. Lumber Co., 5 S. D. 57; Mars v. Oro Fino Mining Co., 7. S. D. 605; St. Clair v. Cox, 106 U. S. 550, L. ed., 222; Doe v. Springfield Etc. Co., 104 Fed. 648; Atlas Co. v. Ball Bros. Etc. Co., 87 Fed. 418, Boardman v. S. S. McClure Co., 123 Fed. 614. The contract itself must furnish the measure of damages, and it was error to enter judgment for the plaintiff for a greater amount in damages than he could have gained by full performance of the contracts. Secs. 2329, 2305 Civil Code; Bowers v. Graves & Vinton Co., 8 S. D. 385; Cranmer v. Kohn, 7 S. D. 247; Holt v. Van Epps, 1 Dak. 218; Hickock v. W. E. Adams Co., 18 S. D. 14. The warranty pleaded by the plaintiff is a warranty of the quality of the

engine, and the measure of damages is the excess, if any, of the value which the property would have had, at the time to which the warranty referred, if it had been complied with, over its actual value at that time. Sec. 2305 Civil Code. The plaintiff could maintain this action for damages for breach of warranty, under such circumstances only as would give him the right to rescind the contract and return the engine. Secs. 1282-1283 Civ. Code; Acme H. M. Co. v. Barclay, 118 N. W. 690; McCormic H. M. Co. v. Martin, 49 N. W. 700; Kimmerer v. Pollard, 96 Pac. 206; Hazen v. Wilhelmie, 93 N. W. 920; Brown v. Baird, 48 Pac. 180; Rouse v. Sarratt, 54 N. E. 757; Yeiser v. Russell, 83 S. W. 574; Noel v. Kangman Etc. Co., 106 S. W. 237; Johnson v. Burnside, 3 S. D. 284; Bank v. Taylor, 5 S. D. 105; Way v. McCaughey, 8 S. D. 475; Grewing v. Minn. T. M. Co., 12 S. D. 127.

*Frank D. Bangs,* for respondent.

The term "managing agent" has no strict legal definition. The term was evidently intended to mean such an agent as should have the charge and management of the ordinary business of the corporation within the particular locality, and an agent invested with general powers, involving the exercise of judgment and discretion in the management of its ordinary business transacted, at least, within that locality. Foster v. Lumber Co., 5 S. D. 57, 58 N. W. 9; Mars v. Oro Fino Min. Co., 7 S. D. 605, 65 N. W. 19; Brown v. Chicago, etc., R. W. Co., 95 N. W. 153; 19 Enc. P. & P., 662. "The general rule of damages for breach of warranty as to quantity or quality is the difference between the actual value of the property at the time of the sale, and what its value would have been if it had conformed to the warranty." Sutherland on Dam., Sec. 670. "The rule of damages just stated, like all general rules, is intended for ordinary cases of the class to which it applies, and where it will afford to the injured party full compensation for his actual loss. It often happens, however, that the delivery and acceptance of property ·which is not conformable to the contract imposes upon the vendee trouble and expense, which add to the loss, for which compensation may be recovered under that rule, which, if it were applied arbitrarily, excluding all

other items, would in many instances fail to give adequate redress." Id. Sec. 671; Lewis v. Bracken, 97 Ga. 337; Milburn v. Belloni, 39 N. Y. 53; Ferris v. Comstock, 33 Conn. 513; Wolcott v. Mormt, 33 N. J. L. 262; Critcher v. Porter-McNeal Co., 135 N. C. 542. Sections 2305 and 2329 Civil Code are not in conflict with the rule allowing the recovery of special damages. Larson v. Calder, 113 N. W. 103; Seiberling et al. v. Mortenson, 9 S. D. 576, 70 N. W. 835; California Canneries Co. v. Pacific Sheet Metal Works, 144 Fed. 886. The fact that plaintiff made an effort to use and operate the engine was not a waiver of his right to damages for the breach. Northwest Cordage Co. v. Rice, 5 N. D., 432; Norton v. Dryfuss, 106 N. Y. 90:

HANEY, J. This is an action for damages resulting from an alleged breach of warranty of machinery purchased by the plaintiff, a resident of this state, of the defendant, a foreign corporation. Service of the summons was made by delivery of a copy to one Everett W. Brown, as defendant's "managing agent." Defendant, appearing for that purpose only, moved the court below to vacate the service on the ground that Brown was not its "managing agent." Denial of this motion is assigned as error.

The language of the pertinent portions of the statute relating to the service of summons in civil actions is as follows: "The summons shall be served by delivering a copy thereof as follows: (1) If the action be against a private corporation, to the president or other head of the corporation, secretary, cashier, treasurer, a director, or managing agent thereof." Rev. Code Civ. Proc. § 110. This clause of the statute embraces foreign as well as domestic corporations. Foster v. Lumber Co., 5 S. D. 57, 58 N. W. 9, 23 L. R. A. 490, 49 Am. St. Rep. 859. It does not require that the person served shall be one having control and supervision of the corporation's entire affairs. It is enough if he has supervision of its business in any particular locality, as one in charge of a lumber yard located in this state, owned by a foreign corporation, having its principal place of business in another state. Foster v. Lumber Co., supra. On the other hand, an attorney authorized by a foreign corporation to apply for patent to mining ground claimed

by it and to execute such papers as may be necessary for that purpose, is not, by virtue of such employment, "a managing agent" within the meaning of that term as used in the statute. Mars v. Mining Co., 7 S. D. 605, 65 N. W. 19. In other words, the agent's authority and duties must embrace more than one transaction. As was stated in Mars v. Mining Co., supra: "The term 'managing agent' has no strict legal definition, and it is not easy to formulate or lay down any general rule that will govern in all cases. But the term was evidently intended to include only such an agent as should have the charge and management of the ordinary business of the corporation within the particular locality, and an agent invested with general powers, involving the exercise of judgment and discretion in the management of its ordinary business transacted, at least, within that locality." The phrase "managing agent" is one frequently found in statues relating to service of process on private corporations. The decisions in other jurisdictions, wherein it has been considered, contain irreconcilable conclusions. This principle, however, which is in harmony with the views heretofore expressed by this court, appears to have been very generally recognized: "A 'managing agent' must be some person vested by the corporation with general powers involving the exercise of judgment and discretion, as distinguished from an ordinary agent or attorney, who acts in an inferior capacity and under the direction and control of superior authority, both in regard to the extent of his duty and the manner of executing it." 5 Words & Phrases, p. 4320. Every person, be he agent, attorney, employe, or servant, authorized to act for and on behalf of another, is clothed with some degree of discretion, while no person so authorized is wholly independent of the supervision and direction of his principal. Hence, the difficulty of drawing the line between one who is and one who is not vested with such powers as constitute a "managing" agent within the meaning of the statute, and this difficulty is immeasurably enhanced when, as in this instance, the nature of the agency must be ascertained from ex parte affidavits, the most unsatisfactory of all forms of evidence.

In the case at bar, the statement that the person served was the defendant's "managing agent" was contained in the verified return on the summons and in plaintiff's affidavit read in opposition to defendant's motion. It was expressly denied in affidavits by the person served, defendant's president and its attorney, read in support of the motion. If such statement be regarded as one of fact, a fact essential to the circuit court's jurisdiction was not established, because its existence was positively denied by the only witnesses having personal knowledge of Brown's relations to the corporation. And this is true whether the statement be regarded as one of fact or as a conclusion of law; the denial being as broad and effective in form as the allegation. But, whereas, the phrase "managing agent" has no well-defined meaning, either technical or in the ordinary and popular sense, the opinion of the persons making the statement was not conclusive on the hearing of this motion. While such statement was proper and necessary as a part of the return, and may have been in itself sufficient to sustain the jurisdiction of the court until directly attacked, its truth was put in issue by the defendant's motion and direct denial, and it became necessary to ascertain the extent of Brown's duties and authority from the facts, distinguished from conclusions, established by the affidavits upon which the ruling of the circuit court was based. It was stated in the affidavit of defendant's president: "That on the 12th day of November, 1906, the date of the pretended service of the summons herein and at all times since, and long prior thereto, the said defendant was and is a corporation organized and existing under and by virtue of the laws of the state of Colorado, having its principal place of business at the city of Denver in said state. That the said defendant at no time had any office, store, factory, warehouse, or place of business in the state of South Dakota. That the only business ever done by said defendant in the state of South Dakota was the taking of orders for the sale of its goods by and through its traveling salesman. That the said Everett W. Brown, upon whom the pretended service of the summons was made in this case, was never at any time the president, secretary, cashier, or a director, officer,

stockholder, managing agent or general agent of the defendant, but was merely a traveling salesman for defendant. * * * That said Everett W. Brown never had charge of any business of the defendant in the state of South Dakota, and did no business for this defendant in the state of South Dakota, except such business as is commonly done by a drummer or traveling salesman." The only other evidence requiring attention is that found in the plaintiff's affidavit. Of course, such portions of it as are stated on information and belief, or which relate to matters clearly not within the personal knowledge of the affiant, should be disregarded. Nor is it necessary to reproduce such portions as are in harmony with defendant's affidavits. The remaining portions are as follows: "The cause of action herein sued upon arose out of the purchase by plaintiff from the defendant of one certain engine, which afterwards proved to be defective in violation of the warranty and guaranty of the defendant with reference thereto. That throughout the entire transaction the defendant corporation was represented by the said Brown. That after the defects in said engine were discovered by affiant, he notified the said Brown thereof, and the said Brown advised this affiant then and there that he would see to it that the defendant corporation 'made the matter right.' This the defendant, however, failed to do, and on the 12th day of November, 1906, the said Brown again called at affiant's saw mill near Keystone, this county, and there had considerable talk with affiant with reference to the adjustment of affiant's differences with the defendant corporation; and the said Brown then and there placed his hand in his pocket as if in the act of reaching for his pocket-book, and stated to this affiant, 'I will give you $50 in cash to settle this matter at once,' which offer affiant then and there refused to accept. That at the same time this affiant had considerable conversation with said Brown with reference to purchasing from the defendant corporation a certain stamp-mill listed in the defendant's catalogue at $600. That no discount therefor was specified in the confidential discount sheet of the defendant, but the said Brown, without waiting to consult with the defendant company or any of its officers or agents, and with-

out writing to, telegraphing to, or otherwise communicating with, them, stated to this affiant that they would sell him said mill at a discount of 25 per cent. from the catalogue price, or in other words, for $450."

Defendant's president stated that Brown was merely a "traveling salesman." Plaintiff's counsel concedes if this be so he was not a "managing agent' within the meaning of the statute. It would seem that the term "traveling salesman" is so generally used and well understood as to leave no room for difference of opinion as to the nature of the duties and authority of one so designated. If, however, the statement should be excluded as a mere conclusion of the witness, defendant's · remaining evidence clearly proves that Brown was in fact employed as a traveling salesman in the ordinary and popular sense of that phrase, unless the effect of such evidence was overcome by competent facts in the plaintiff's affidavit. It is well settled that the declarations of an agent are not competent to prove the extent of his authority. 2 Am. & Eng. Ency. of law & Prac. 140. But, waiving this objection, it does not appear from any competent evidence introduced by the plaintiff that Brown on any occasion performed any duty or assumed to have any authority not usually performed and possessed by an ordinary traveling salesman. There is nothing to show that he did not at all times act "in an inferior capacity and under the direction and control of superior authority, both in regard to the extent of his duty and the manner of executing it." There is nothing to show that he was not specifically directed by his principal to offer plaintiff $50 in settlement, or that he was not specifically authorized to offer the discount mentioned in plaintiff's affidavit. To hold, upon the facts disclosed by this record, that Brown was a managing agent within the meaning of the statute, would be to establish the rule that service may be made upon any traveling salesman of a private corporation, either foreign or domestic. Clearly, such was not the intention of the law-making power. It is true notice of the service in the present case was promptly communicated to the corporation. Undoubtedly, it usually would be so communicated by any agent or employe, how-

ever limited might be his duties and authority. But that question is not here involved. The Legislature, in its wisdom, has required service of summons in civil actions against private corporations to be made by the delivery of a copy thereof to certain classes of the defendant's officers and agents, and jurisdiction cannot be acquired by delivery to any person not belonging to one of the prescribed classes. If the law should be changed in this respect it is the duty of the Legislature, not the duty of this court, to change it. Defendant's motion should have been sustained. The judgment of the circuit court should be reversed with directions to dismiss the action. However, as a majority of the judges do not concur in these conclusions, other assignments of error require consideration.

The complaint, in substance, alleges the sale by defendant to plaintiff of one "Chandler & Taylor Slide-Valve" engine, warranted by the defendant to have been tested under full pressure before shipment, to have the capacity of generating 30 horse power at standard speed and 80 pounds pressure, to be sound and merchantable and to be reasonably fit for the purpose of furnishing power to operate plaintiff's sawmill; that the engine did not comply with the terms of the warranty in several specified respects; that when plaintiff purchased the engine he had several large contracts on which he would have made large profits had the engine been as warranted; that defendant knew of these contracts; that by reason of the defects in the engine the plaintiff was forced to cancel orders and contracts, thereby losing the profits he otherwise would have made thereon; that by reason of its defects he was forced to expend much time and money in repairing the engine and large sums as demurrage on cars waiting to be loaded with lumber at his mill; that the engine, as delivered, was not worth to exceed $100; and that plaintiff was damaged in the sum of $1,000. Three defenses were interposed. The first, relating to the jurisdiction of the court, contained the allegations relied on in support of defendant's motion to set aside the service of the summons. The second denied all the allegations of the complaint not expressly admitted; admitted that defendant was a corporation

existing under the laws of Colorado, engaged in manufacturing, buying, and selling machinery and supplies for factories, mines, and milling; that it distributed a catalogue of the wares and merchandise dealt in by it; that such catalogue described a style of engine held for sale by defendant known as the "Chandler & Taylor Slide Valve Engine;" that the plaintiff purchased one of these engines at the city of Denver, paying therefor $288. In its third defense defendant alleged that there was printed in a conspicuous place in its catalogue the following terms and conditions: "Under no circumstances are we (the defendant) responsible for any damages beyond the value of the goods. No charges for labor or expenses required to repair defective goods, or occasioned by them, will be allowed. If the goods are defective, the measure of damages is the value of the defective piece," which terms were well known to the plaintiff and assented to by him at and prior to the purchase of the engine mentioned in the complaint. That no other warranty or guaranty or undertaking was made by the defendant, to the plaintiff, at or prior to the purchase of said engine, or before this action. That at the time of the purchase of said engine, and as a part of the consideration for the sale thereof, it was expressly understood and agreed by and between the plaintiff and defendant, that under no circumstances was the defendant to be responsible for any damages beyond the value of the said goods sold; that no charges for labor or expense required to repair the said engine or other goods claimed to be defective, or occasioned by them, were to be allowed by the defendant to the plaintiff; and that if the said engine or other goods sold were or should prove to be defective, the measure of damages should be the value of the defective piece, and not otherwise.

It was undisputed that one of the catalogues mentioned in the pleadings was delivered to the plaintiff; that defendant's salesman visted the plaintiff's mill and was informed as to the use for which an engine was needed by the plaintiff; that plaintiff subsequently ordered an engine which defendant could not supply; that defendant recommended the purchase of a 'Chandler & Taylor,' referring to the description of such engine in its catalogue

then in plaintiff's possession; and that a "Chandler & Taylor" engine was ordered by wire. There was evidence tending to prove that the engine when received did not comply with the warranty as alleged by the plaintiff, and that considerable time and labor were expended before it was made to operate satisfactorily. Evidence was received over proper objections tending to prove that plaintiff sustained serious loss of profits by reason of the delay occasioned by the failure of the engine to comply with the terms of the alleged warranty. The jury returned a verdict in favor of the plaintiff for $500; defendant's application for a new trial was denied, and it appealed.

Aside from the matter of jurisdiction the assignments of error relate to the terms of the warranty and measure of damages. According to the allegations of the complaint the engine was warranted to be as described in the catalogue. These instructions were given at plaintiff's request: "You are instructed, gentlemen of the jury, that the plaintiff in this case relies in part on the allegation that the defendant, in its catalogue printed, published, and distributed for the purpose of effecting sales of goods held for sale by it, printed the assertion that the engine in question was tested under full pressure before shipment, and that the same would generate at standard speed at 80 pounds pressure, 30 horse power, and that the defendant wrote and telegraphed to this plaintiff recommending that he purchase said engine, and that plaintiff relied in purchasing said engine upon the assertions above mentioned contained in said catalogue, and plaintiff contends that the same constituted, under those circumstances, a warranty that said engine had been tested before shipment under full pressure and had been found to generate at 80 pounds pressure, and standard speed, 30 horse power. You are instructed, gentlemen of the jury, that if you find these contentions of the plaintiff to be true in point of fact, and that plaintiff did rely upon the aforesaid statements contained in said catalogue, and that said statements were so printed and published by the defendant and intended by it as a warranty thereof, your verdict will be for the plaintiff. You are instructed that the defendant in this case interposes as one

of its defenses the plea that in the catalogue published by it and from which plaintiff ordered the engine in question, was printed the following provisions, viz.: 'Under no circumstances are we responsible for any damages beyond the value of the goods. No charges for labor, or expenses required to repair defective goods, or occasioned by them, will be allowed. If the goods are defective, the measure of damages is the value of the defective piece'; and that such terms were well known to the plaintiff and assented to by him at and prior to the purchase of the engine mentioned in the complaint. You are instructed as a matter of law that the defendant's liability, if you find it reliable [liable], would not be limited by the insertion of such provision in said catalogue unless you find that the plaintiff had knowledge of the same and assented thereto at and prior to the purchase of the engine mentioned in the complaint." As no instructions were given regarding implied warranties the verdict can be sustained only on the theory that an express warranty existed, the terms of which were stated in the catalogue. The catalogue was in evidence. There was no dispute as to the meaning of its contents. It was an instrument, the legal effect of which should have been determined by the court. It either did or did not contain the terms of the contract. "One who takes the benefit must bear the burden." Rev. Civ. Code, § 2420. No one should be allowed to rely on what is beneficial to him and repudiate what is not in any instrument or transaction. If the catalogue was evidence of a warranty as against defendant, it was evidence of all the terms and conditions of such warranty, whether or not they had been read by the plaintiff. Suppose, instead of delivering this catalogue, defendant had delivered a written warranty, such as is often given to the purchaser of machinery, could the plaintiff be allowed to base an action for damages upon one part of the contract and allege he was not bound by other parts because he had not read them? Certainly not. Still, that is, in effect, what was permitted by the trial court in this action.

On the measure of damages the court charged the jury as follows: "You are further instructed, gentlemen of the jury, that should you find upon the testimony that the plaintiff in this case,

at the time or prior to the time of the purchase of this engine, had knowledge of this provision in the catalogue mentioned in the complaint and alleged in the answer, that defendant was not responsible for any damage beyond the value of the goods sold, then you are instructed that you cannot find for the plaintiff in any amount exceeding the sum of $180.00, the difference between the amount they admit the engine to be worth in their complaint, which is $100.00, and the cost of the engine and the further sum of $44.00 freight. On the other hand, should you find that the plaintiff in this case had no knowledge of this provision in the catalogue, then you are instructed that you may find for the plaintiff in such sum as you may find he has been damaged in any way or in any particular directly resulting from this defective engine, not exceeding the sum of $1,000. You are instructed that you should not go out and hunt up speculative damages and prospective sales, but only such damages as the plaintiff may have proven in this case, lost time and damages of that character, actual expenses incurred in repairing the engine and loss of time, and items of that kind."

These instructions were erroneous (1) be cause they permitted recovery for the breach of a warranty not alleged in the complaint; (2) because they permitted recovery for the breach of an implied warranty, the nature and terms of which were not defined by the court; (3) because they did not state the proper measure of damages if an implied warranty was involved; and (4) because they were too indefinite under any possible view of the contract. As has been suggested, plaintiff's cause of action was founded upon the express warranty in the catalogue, to the breach of which the recovery should have been limited. Assuming, however, that the pleadings and evidence disclosed an implied warranty, its terms should have been defined. Except as prescribed in the article relating to warranty in our Civil Code, a mere contract of sale does not imply a warranty. Rev. Civ. Code, § 1323. There was no evidence that the defendant or any agent employed by it knew of any fact concerning the engine which would, to his knowledge, have destroyed the plaintiff's inducement to buy. The engine was

not manufactured by the plaintiff. It was, however, inaccessible to the examination of the plaintiff. Therefore, it was either sold under the express warranty in the catalogue or the implied warranty that it was "sound and merchantable." Id. §§ 1326, 1328, 1330. What then is the measure of damages for the breach of such implied warranty in this jurisdiction? Article 1, chapter 2, title 2, of our Civil Code, relating to the measure of damages for breach of contract contains these provisions: "Section 2305. The detriment caused by the breach of a warranty of the quality of personal property is deemed to be the excess, if any, of the value which the property would have had, at the time to which the warranty referred, if it had been complied with, over its actual value at that time. Section 2306. The detriment caused by the breach of a warranty of the fitness of an article of personaly property for a particular purpose is deemed to be that which is defined by the last section, together with a fair compensation for the loss incurred by an effort in good faith to use it for such purpose."

The contention that section 2305, relates only to general damages, or such as are the natural and necessary results of the breach and does not include special or such consequential damages as the parties may reasonably be supposed to have had in contemplation when the sale was made, is in a sense correct. That section establishes the rule only in cases to which it is applicable, and may be said to express the general rule, while section 2306 provides for what respondent terms "special damages," prescribing the cases in which they are allowable and the true measure of the same. Construed together these sections are not in conflict with the generally recognized doctrine relating to direct and consequential damages for breach of warranty. They not only announce the general rule, but define the cases in which the general rule shall be regarded as affording inadequate redress and special or consequential damages allowed. The fallacy in respondent's argument is his failure to observe that his case does not fall within the terms of the section authorizing special damages. If it involved a warranty of the fitness of the engine for the purpose for which it was purchased it would admit of special damages, the

measure of which would require consideration. Defendant may have known the purpose for which the engine was purchased, but its fitness for that purpose was not warranted. If there was any warranty it resulted from the use of the catalogue—the express warranty printed therein, or from the contract of sale—the implied warranty that the engine was "sound and merchantable." Defendant is not complaining and plaintiff is not in position to complain of the charge as to the measure of damages for a breach of the former, while it is clear that the proper measure of damages for a breach of the latter is governed by the provisions of section 2305, Hence, the court erred in admitting evidence of lost profits and in charging the jury as it did with respect to the measure of damages, should they find that plaintiff did not know of all the terms and conditions printed in the catalogue. Moreover, the charge was erroneous for the reason that it failed to clearly define the nature and extent of the injuries for which the plaintiff was entitled to compensation under any implied warranty. Therefore, assuming the circuit court had jurisdiction, its judgment should be reversed and a new trial ordered.

CORSON, J., concurs.

WHITING, P. J. (concurring specially). While I am of the opinion that, under the pleadings and the instructions as given, there is error sufficient to warrant the granting of a new trial herein, yet I am unable to agree with the foregoing opinion either upon the question of jurisdiction or in all that is found therein relating to the measure of damages for breach of warranty.

While sections 2305, 2306, of the Revised Civil Code of this state cover the measure of damages in all ordinary cases, yet I am of the opinion that, whenever there is a warranty of quality or fitness and the seller knows that the purchaser has certain work contracted for in the performance of which work the machine to be purchased is to be used, and where, if there shall prove to be a breach of such warranty, it must be anticipated that the purchaser will suffer a loss of profits on the contract he has entered into, the seller will be liable for such loss of profits as would be thus anticipated to naturally flow from such breach of warranty; the

damages to be recovered, in any case, being limited under section 2329 of the Revised Civil Code by the amount which the injured party would have gained if there had been no breach of such warranty. Sections 671-676 (3d Ed.), Sutherland on Damages; Critcher v. Porter-McNeal Co. et al., 135 N. C. 542, 47 S. E. 604. In the North Carolina case, which in many respects was quite similar to this, is found quoted the rule as laid down in the leading case of Headley v. Baxendale, Exch. 341, as follows: "When two parties made a contract which one of them has broken, the damages which the other party ought to receive in respect to such breach of contract should be such as may fairly and reasonably be considered either arising naturally—that is, according to the usual course of things—from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiff to defendant, and thus known to both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated. But on the other hand, if these special circumstances were wholly unknown to the party breaking the contract, he, at most, could only be supposed to have had in his contemplation the amount of injury which would arise generally, and in a great multitude of cases, not affected by any special circumstances for such a breach of contract, for, had the special circumstances been known, the parties might have specially provided for the breach of contract by special terms as to the damages in that case, and of this advantage it would have been very unjust to have deprived them."

I believe the trial court was correct in holding that it had acquired jurisdiction over the defendant through the service of the summons upon the agent Brown. There was, in the affidavits presented to such court, sufficient to justify the court in finding: That said corporation had been doing business within this state,

in the selling of mining machinery, for several years, but that it had wholly failed to obey the laws of this state requiring the appointment of an agent upon whom service of papers might be made; that Brown, upon whom it is claimed service was made in this case, was an agent of the company who had been such agent for some time; that every few months he made a certain territory in this state soliciting and taking orders for the machinery sold by the defendant company; that such agent had more or less discretion in the matter of granting terms to purchasers, other than those terms named in the catalogues; and that the company frequently shipped machinery consigned to themselves, which machinery Brown would then deliver. Our statute permits of service upon a managing agent where the foreign corporation is doing business in this state. The only question for our determination then is whether or not said Brown was such an agent as is contemplated by such statute. No fixed rule or criterion can be laid down for determining who are and who are not managing agents, but when, as in this case, a foreign corporation has appointed no agent upon whom service might be made—has no fixed place of business in this state—and does no business here except that of selling machinery upon orders received by mail or such as may be taken by their traveling agent, the court should certainly, if possible, hold that such agent—being the only person in the state through whom the company does business— is, for the purpose of litigation growing out of such business transacted within this state, a proper agent for service of papers.

In the case of Palmer v. Foley, 42 Super. Ct. Rep. (N. Y.) 369, the court well said: "The Code does not specify the extent of the agency required to bind defendants by service of process, except that the person upon whom the service is made, must be managing agent. Were the rule to be established as contended by appellants, that the agent must have charge of the whole business of the corporation, the statute would be a dead letter, for such seldom, if ever, exists. Every object of the service is attained when the agent served is of sufficient character and rank to make it reasonably certain that defendant will be apprised of the service

made. The statute is satisfied if he be a managing agent to any extent," and the appellate court of New York, in the case of Tuchband v. Chicago & A. R. Co., 115 N. Y. 437, 22 N. E. 360, used the following language, which we think is applicable to all cases under this statute: "It of course intends 'a managing agent' in this state; and when the corporation, created by the laws of any other state, does business in this state, the person who, as its agent, does its business should be considered it managing agent." In the New York case, such foreign corporation had an office or fixed place of business, but we cannot see why this fact should distinguish that case from the one now before us. We are satisfied that the trial court committed no error in denying the motion and holding the service of the summons to be good.

The judgment appealed from is reversed and a new trial ordered.

McCOY, J. I concur in the result that there should be a reversal of the judgment and a new trial ordered.

SMITH, J. I concur with Justice WHITING as to service of summons on a managing agent, and in the conclusions of Justice HANEY as to error in the charge of the trial court, for which a new trial should be awarded.