BREWSTER, Appellant v. F. C. RUSSELL COMPANY,

Respondent

(99 N.W.2d 42)

(File No. 9765. Opinion filed November 4, 1959)

**Paul E. Mundt,** Sioux Falls, for Plaintiff-Appellant.

**Blaine Rudolph (of Bogue & Rudolph),** Canton, for Defendant-Respondent.

BIEGELMEIER, J. This appeal involves questions of the sufficiency of service of the summons and of the jurisdiction of the courts of South Dakota. Plaintiff's verified complaint alleges that defendant is an Ohio corporation which is engaged in the manufacture, distribution and promotion of the Rusco products; that it does business in South Dakota through authorized representatives; that plaintiff

for several years worked as a Rusco salesman and sold its products through H. S. Price Company; that defendant sponsored a contest for all salesmen engaged in the sale of its products; that plaintiff did considerable work in preparing for the contest; that defendant abruptly terminated the contest; that plaintiff received payment for part of the work he did in the contest and requests various damages, the validity of which are not involved in this appeal. This complaint and a summons were served in Minnehaha County, South Dakota, on one Johnson, stated in the affidavit of service to be the Division Manager and Agent of the defendant. Defendant made a special appearance and moved the court to set aside, vacate and quash the service of the summons and complaint for the insufficiency of service of process in that the defendant was a foreign corporation not doing business in South Dakota and not subject to the jurisdiction of the courts thereof and no service of such papers had been made upon it by service upon the persons or in the manner provided by statute, the motion being based upon the affidavit of H. S. Price. This motion and order to show cause issued for hearing thereon stated they were made on this affidavit and the order was made returnable in three days; the settled record includes an answering affidavit of the plaintiff, Charles L. Brewster, and an affidavit of S. S. Mills; the record does not show that any of these affidavits or the order to show cause were served on the opposing parties or their attorneys but as it shows that the parties appeared at the hearing and no objection was made at that time, or in this court, we assume they were duly served. The circuit court entered its order quashing service of the summons and complaint in which it found that the defendant corporation was not doing business in this state at the time of the alleged service thereof so as to subject itself to the jurisdiction of the State of South Dakota for the purpose of service of process, from which order plaintiff appealed.

SDC 33.0807 provides the methods of service of a summons and so far as pertinent here states:

"The summons shall be served by delivering a copy thereof. Service shall be made as follows:

\* \* \* (2) If the action be against a foreign private corporation, on the \* \* \* managing agent thereof; but such service can be made as to a foreign corporation only when \* \* \* the cause of action arose within \* \* \* this state \* \* \*;"

Defendant did not in the lower court, nor here, rely upon the failure of the affidavit of service to state that service was made on a "Managing Agent" thereof as Mars v. Oro Fino Mining Cc., 1895, 7 S.D. 607, 65 N.W. 19, indicates and so we consider this question on the whole record in the same manner as the court did on that appeal. As we read the order the circuit court based its decision on the issue that the defendant corporation "was not doing business" in this state at the time the summons and complaint were served and not on the issue of whether Johnson was the Managing Agent; the written opinion of the circuit judge confirms this and while we might pass over this Managing Agent question in that state of the record, we believe it should be considered on this appeal.

█ Affidavits are unsatisfactory as forms of evidence; they are not subject to cross-examination, combine facts and conclusions and, unintentionally or sometimes even intentionally, may omit important facts or give a distorted picture of them. As to this, Judge Haney in Christiernson v. Hendrie & Bolthoff Mfg. & Supply Co., 1910, 26 S.D. 519, 128 N.W. 603, 604, stated:

"Hence, the difficulty of drawing the line between one who is and one who is not vested with such powers as constitute a 'managing' agent within the meaning of the statute, and this difficulty is immeasurably enhanced when, as in this instance, the nature of the agency must be ascertained from ex parte affidavits, the most unsatisfactory of all forms of evidence."

This order being based on affidavits, the decisions stating that the circuit judge is in the better position to observe the witnesses, their manner and demeanor while testifying etc., do not apply; this court is in the same position in that

regard as the circuit court. Credit Management Service, Inc. v. Wendbourne, 1955, 76 S.D. 80, 72 N.W.2d 926. Thus they are considered much the same as they were there.

■ The affidavit of service states that the summons and complaint were served on the defendant by delivering and leaving the same with one Johnson, knowing that he was at that time the Division Manager and Agent of the defendant, this service being made in the offices of H. S. Price Company, an authorized distributor of the defendant in Minnehaha County, South Dakota. The affidavit of H. S. Price on defendant's behalf stated that he was president of H. S. Price Rusco Window Company, which is a distributor of metal combination windows known by the trade name Rusco; that Price has various dealers in South Dakota who handle these products; that defendant company does not deal with or sell directly to these dealers but only through Price; that Price buys directly from the defendant and is completely independent of it; all Price's purchases are made directly from and payments are made to the defendant's offices in Ohio; that defendant company maintains no office, sales person or other employees, stock of goods or merchandise in South Dakota, but all installation of defendant company's products are made in South Dakota by the Price Company and none by the defendant; that he is acquainted with said Johnson, an employee of the defendant company who calls on Price about every ninety days at which times he explains new developments concerning defendant's productions, answers questions which may have come up regarding assembly, installation, handling sales or other problems concerning such production; that Johnson does not solicit orders for the defendant company's products nor does he negotiate contracts, prices or other business relating to the purchase by Price of the defendant's products. The Mills' affidavit on defendant's behalf states that he is secretary and assistant treasurer of defendant company; that defendant corporation is not qualified to do business in South Dakota and does not do business therein; that it has no resident manager, agent or sales personnel in South Dakota and maintains no office therein; that

it makes sales in interstate commerce to the Price Company in which defendant has no interest or control; that the defendant "maintains a District Manager by the name of E. P. Johnson who is a resident of the State of Minnesota and maintains his office in that state; that the sole activity of said E. P. Johnson in the State of South Dakota was and is the solicitation of sales in interstate commerce by the F. C. Russell Company to the H. S. Price Company; that the State of South Dakota is one of the states in the territory of said E. P. Johnson as such District Manager; that on or about August 28, 1958 said E. P. Johnson was on a business trip through his territory when a Complaint filed by plaintiff, one Charles L. Brewster, against the F. C. Russell Company" was served on Johnson; that Johnson was and is not an agent for defendant for the service of process in South Dakota and has no authority to accept service thereon. Plaintiff's answering affidavit stated among other things that Johnson makes regular trips to South Dakota and to the Price Company; that he is the only representative of the defendant authorized to do the business of said company in South Dakota and that in his duties Johnson solicits sales for the defendant company, consults with H. S. Price about new developments of the company,explains any problems of assembly encountered by the Price Company on defendant's products, conveys information on installation of these products to the Price Company; explains any handling difficulties or aid to the Price Company concerning such merchandise, gives sales talks to salesmen employed by the Price Company using defendant's suggested material, and has sponsored sales contests for the Price Company salesmen promoting the sale of defendant's products; that defendant corporation is doing a regular and thriving business in South Dakota because of the regular shipment of defendant's products into South Dakota and because of the regular solicitation and assistance of Johnson to the Price Company.

In the Mars case this court held that an attorney in in fact authorized to sign papers and take necessary steps to secure patents for mining claims was not a "managing

agent" for the service of process under Section 4898, Compiled Laws, the predecessor of SDC 33.0807. Black Hills Brewing Co. v. Middle West Fire Ins. Co., 1915, 35 S.D. 130, 151 N.W. 44, held that the term "managing agent" upon whom a notice of levy was required to be served included a general agent for the company authorized to write risks and issue policies for it. Christiernson v. Hendrie & Bolthoff Mfg. Supply Co., supra, presented a similar situation to the case at bar. There the president of the defendant corporation made an affidavit that the only business it did in South Dakota was the taking of orders for the sale of its goods through its traveling salesman and that Brown, upon whom the service of the summons was made, was merely a drummer or traveling salesman for defendant. The plaintiff's affidavit stated that his cause of action arose out of the purchase of an engine from defendant which engine proved defective but that Brown advised plaintiff that he would see to it that defendant corporation made the matter right; that there was later talk with Brown with reference to an adjustment of the differences and Brown offered $50 to settle this which plaintiff refused. At the same time they talked about the purchase of a stamp mill machine from defendant corporation which Brown offered plaintiff at a discount of 25% from the list price. Judge Haney, on this record, believed the defendant's motion to vacate the service of the summons should be sustained, but stated: "However, as majority of the judges do not concur in these conclusions, other assignments of error require consideration."[26 S.D. 519, 128 N.W. 606.] Judge Whiting, concurring specially, agreed that a new trial should be granted for error in the instructions, but for this majority said:

> "I believe the trial court was correct in holding that it had acquired jurisdiction over the defendant through the service of the summons upon the agent Brown. There was, in the affidavits presented to such court, sufficient to justify the court in finding: That said corporation had been doing business within this state, in the selling of mining machinery, for several years, but that it had wholly

failed to obey the laws of this state requiring the appointment of an agent upon whom service of papers might be made; that Brown, upon whom it is claimed service was made in this case, was an agent of the company who had been such agent for some time; that every few months he made a certain territory in this state soliciting and taking orders for the machinery sold by the defendant company; that such agent had more or less discretion in the matter of granting terms to purchasers, other than those terms named in the catalogues; and that the company frequently shipped machinery consigned to themselves, which machinery Brown would then deliver. Our statute permits of service upon a managing agent where the foreign corporation is doing business in this state. The only question for our determination then is whether or not said Brown was such an agent as is contemplated by such statute. No fixed rule or criterion can be laid down for determining who are and who are not managing agents, but when, as in this case, a foreign corporation has appointed no agent upon whom service might be made—has no fixed place of business in this state—and does no business here except that of selling machinery upon orders received by mail or such as may be taken by their traveling agent, the court should certainly, if possible, hold that such agent—being the only person in the state through whom the company does business—is, for the purpose of litigation growing out of such business transacted within this state, a proper agent for service of papers."

In Scholnik v. National Airlines, 6 Cir., 1955, 219 F.2d 115, 120, a District Sales Manager of Capital Airlines was held to be a "managing or general agent" under Federal Rules of Procedure, and a managing agent under the Ohio statute upon whom process could be served as such for the defendant National Airlines.

It is interesting to note that the affidavit made in the present action by the local distributor states: "that E. P.

Johnson does not solicit orders" for defendant's products, while the affidavit of the acting secretary and assistant treasurer of defendant states: "that the sole activity of said E. P. Johnson in the State of South Dakota was and is the solicitation of sales in interstate commerce by" the defendant company to Price Company.

From the whole record it appears that Johnson in addition to soliciting sales for defendant company's products, consults with and advises its distributor as to any problems of assembly and instalation thereof, gives sales talks to salesmen to stimulate sales and has sponsored sales contest for these products out of which contest this action arose, all of these activities within the state and that while in this state on the business of his employer as its District Manager he has sufficient status and duties to be a Managing Agent within the purview of SDC 33.0807. While the plaintiff's showing is not as complete and detailed as it might be, plaintiffs are usually in a disadvantageous position to make such proof on this issue and affidavit of Johnson was not presented showing his duties and activities and other detailed facts in connection therewith. Cross-examination of Johnson as an adverse witness or under subpoena as permitted by our law may have evinced these details more clearly and produced the more satisfactory evidence desired by Judge Haney's comments. Such appears to have been done in Scholnik v. National Airlines, supra, and in Frene v. Louisville Cement Co., infra.

It is admitted that Johnson was an agent and employee and has a title of District Manager of the defendant; that he was in this state on the business of the defendant corporation at the time service of process was made on him. Our conclusion is that he was a managing agent thereof as that term is used in SDC 33.0807 and the service of the summons and complaint on him conferred personal jurisdiction of the courts of this state on the defendant corporation unless for some other reason the defendant is immune. By omitting from the order a finding that Johnson was not such agent and making no mention of it in his written opinion but resting it on different grounds it ap-

pears that the lower court was of the same opinion on that issue.

In its brief plaintiff claims defendant corporation is and defendant claims it is not—doing business in South Dakota, amenable to service of process or subject to the jurisdiction of the courts thereof. Defendant poses this claim in the following language:

> "Consequently, the only issue presented by Appellant's Point I is whether or not under the facts established herein Respondent was **doing business** in South Dakota at the time of the attempted service of process, so as to subject it to jurisdiction of South Dakota Courts."

and cites and quotes from authorities on this issue.

 As a prelude to the consideration of this claim, it may be well to state that decisions of the U. S. Supreme Court are final as to what constitutes interstate commerce; this court has so announced in previous cases. Wyman, Partridge Holding Company v. Lowe, 1937, 65 S.D. 139, 272 N.W. 181; Dakota Photo Engraving Co. v. Woodland, 59 S.D. 523, 241 N.W. 510 and Trans.-Mississippi Grain Co. v. Spracher, 1924, 47 S.D. 262, 197 N.W. 686. Defendant has cited and quoted from the Lowe case in support of its arguments. We can put these cases aside as they involve the application of our foreign corporation law. There is a difference in the right to subject a foreign corporation to the jurisdiction of the courts of a state by the service of process from the power of a state to impose conditions, restrictions or regulations on the corporation's activities in the state. This difference is noted in 23 Am.Jur., Foreign Corporations, § 362.

> "If the question relates to the right to subject a foreign corporation to the jurisdiction of the courts in the state through service of process, the point presented is different from the one presented where it relates to the power of the state to impose conditions, restrictions, or regulations upon the corporation's activities in the state. * * * If the issue

is whether the corporation is within the purview of statutes relative to foreign corporations transacting business in the state, and imposing burdensome restrictions thereon, the character of the transaction as one of interstate commerce may be decisive, and acts done in addition to the solicitation, if such appear, must be considered in their character as incidents, or not, to such commerce. On the other hand, if the issue is whether the corporation is doing business in such a manner and to such an extent as to make it amenable to the jurisdiction and process of the courts, the interstate character of the transaction is immaterial, and acts other than the solicitation, or even the character and manner of the solicitation itself, may be more persuasive that the corporation is doing business in the state."

In the Woodland opinion, supra [59 S.D. 523, 241 N.W. 511], Judge Roberts speaking for the court recognized this distinction when he said: "The distinction between the presence of a foreign corporation for service of process though doing an exclusive interstate business and the absence for other purposes is of no consequence in the case at bar. See International Harvester Co. v. Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479." This is the same case that is cited in 23 Am.Jur., supra. In the International Harvester case, the court was presented with the sufficiency of service of process in a criminal proceeding against it by the State of Kentucky and a motion was made to quash the service for the reason it was claimed that it violated the commerce and due process clauses of the Federal Constitution. It is apparent that the Company by written instructions to its agents had attempted to keep from "doing business" in Kentucky, part of the instructions to its agents being "the company's transactions hereafter with the people of Kentucky must be on a strictly interstate commerce basis." Yet the Supreme Court affirmed the state court's decision that it was doing business in the state and that neither the commerce nor the due process clauses of the U. S. Constitution were violated, saying:

"In the case now under consideration there was something more than mere solicitation. In response to the orders received, there was a continuous course of shipment of machines into Kentucky. There was authority to receive payment in money, check, or draft, and to take notes payable at banks in Kentucky. * * *

"True, it has been held time and again that a state cannot burden interstate commerce or pass laws which amount to the regulation of such commerce; but this is a long way from holding that the ordinary process of the courts may not reach corporations carrying on business within the state which is wholly of an interstate commerce character. * * *

"We are satisfied that the presence of a corporation within a state necessary to the service of process is shown when it appears that the corporation is there carrying on business in such sense as to manifest its presence within the state, although the business transacted may be entirely interstate in its character. In other words, this fact alone does not render the corporation immune from the ordinary process of the courts of the state." [234 U. S. 579, 34 S.Ct. 946.]

One hundred and twenty years ago Chief Justice Taney made the remark that "a corporation can have no legal existence out of the boundaries of the sovereignty by which it is created," and it "must dwell in the place of its creation and cannot migrate to another sovereignty." Bank of Augusta v. Earle, 1839, 13 Pet. 519, 38 U.S. 519, 10 L.Ed. 274. These statements have often been quoted; see 23 Am.Jur., Foreign Corporations, §§ 16, 19 and 20 and cases cited. He explains, however, that this did not bar a corporation from doing business elsewhere than in the state of its creation.

By comity, a corporation may exercise some of its powers to do business by its agents in a state other than that of its origin. Moulin v. Trenton Mutual Life, 25 N.J.L.

57. This is not a legal or constitutional right except a state may not unlawfully impinge interstate commerce. Thomson v. Meridian Life Ins. Co., 1917, 38 S.D. 570, 162 N.W. 373.

Historically, the jurisdiction of a court to render a judgment in personam against a defendant depended upon the presence of the defendant within the territorial jurisdiction of the court. Pennoyer v. Neff, 1877, 5 Ott. 714, 24 L.Ed. 565; Scholnik v. National Airlines, 6 Cir., 1955, 219 F.2d 115. The road we have since traveled has been marked by jurisdiction supported by theories of "Consent" (La Fayette Ins. Co. v. French, 1855, 18 How. 404, 15 L.Ed. 451; Judge Learned Hand in Smolik v. Philadelphia & Reading Coal & Iron Co., D.C.S.D.N.Y.1915, 222 F. 148 and Cardozo, J., in Bagdon v. Philadelphia & Reading Coal & Iron Co., 1916, 217 N.Y. 432, 111 N.E. 1075, L.R.A.1916F, 407); "Presence" (Philadelphia & Reading R. R. Co. v. Mc-Kibbin, 1917, 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed. 710; Hutchinson v. Chase & Gilbert, 2 Cir., 1930, 45 F.2d 139, 142, another opinion by Judge Hand, then on the Court of Appeals, which leans partly on continuous business or dealings, and partly on the inconveniences of being required to defend, in the forum state); and "Doing Business" (Hand, J., supra,and see Rothschild, Jurisdiction of Foreign Corporations in Personam, 1930, 17 Va.L. Rev. 129, and Restatement, Judgments, 1942, § 30, Comm. b.). It was this Judge Hand who in Hutchinson said: "It is quite impossible to establish any rule from the decided cases; we must step from tuft to tuft across the morass".

Frene v. Louisville Cement Co., 1943, 77 App.D.C. 129, 134 F.2d 511, 512, 146 A.L.R. 926 gave opportunity for Judge Rutledge, who the next month was to take his seat as Associate Justice of the U.S. Supreme Court, to consider this morass. In that case, the District Court quashed the service of the summons made on one Lovewell, the defendant's employee in the District of Columbia, defendant claiming it was not doing business there. The defendant was a Kentucky corporation. It maintained no office or place of business in the district; Lovewell, the agent, resided in adjoining Maryland; had authority to solicit orders for de-

fendant's products and sold a quantity of its material; had no authority to conclude contracts or make binding sales; when he secured orders he forwarded them to Louisville where they were accepted or rejected; accepted orders were filled in interstate commerce to dealers who in turn supplied them to contractors or consumers; defendant asserted that Lovewell's authority over orders he transmitted ceased and his duties ended then; Lovewell often visited jobs, noted the manner in which products were being used and if any difficulty was being experienced "he would make suggestions as to how to ovecome them * * * just to maintain the good relations"; he had no authority finally to make adjustments or compromises and no authority except to solicit orders. The opinion cites many cases in the footnotes, reviews the tradition personal service, the doing business and presence doctrines of jurisdiction, refers to the basis of the "solicitation plus" theory for jurisdiction and then states:

> "In general the trend has been toward a wider assertion of power over nonresidents and foreign corporations than was considered permissible when the tradition about 'mere solicitation' grew up * * *.
>
> "Solicitation is the foundation of sales. Completing the contract often is a mere formality when the stage of 'selling' the customer has been passed. No business man would regard 'selling,' the 'taking of orders,' 'solicitation' as not 'doing business'. The merchant or manufacturer considers these things the heart of business. It is perfectly possible, under the 'mere solicitation' rule, for a foreign corporation to confine its entire market to a single jurisdiction, yet by carefully limiting its activities there to the soliciting phase, to force each of its customers having cause for legal redress to seek it in the foreign forum of incorporation. By careful segregation of the 'selling' phase in the place of market, a substantially complete immunity to liability, in the practical sense, could be created.
>
> "It would seem, therefore, that the 'mere solicitation' rule should be abandoned when the solicit-

ing activity is a regular continous and sustained course of business, as it is in this case. It constitutes, in the practical sense, both 'doing business' and 'transacting business,' and should do so in the legal sense. * * *

"He (Lovewell) visited the jobs where defendant's product was being used, made suggestions for solving difficulties which arose in its use, received complaints, forwarded them to the home office and, while he had no authority to make final settlements or contractual adjustments, aided generally both in preventing and in clearing up misunderstandings and difficulties arising in the course of performance of defendant's contracts. * * *

"According to that criterion everything an employer or an agent might do which would tend to cause customers to return or new ones to come by learning of the satisfaction of old ones, would be 'mere solicitation,' and only acts harmful to the employer's interest would be a part of his business for jurisdictional purposes. The criterion is obviously untenable."

Thus was the setting for a group of cases that were to make their appearance before the U. S. Supreme Court. The first of these was International Shoe Company v. Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 156, 90 L.Ed. 95, 161 A.L.R. 1057, where the court said:

"The questions for decision are (1) whether, within the limitations of the due process clause of the Fourteenth Amendment, appellant, a Delaware corporation, has by its activities in the State of Washington rendered itself amenable to proceedings in the courts of that state to recover unpaid contributions to the state unemployment compensation fund exacted by state statutes, * * * and (2) whether the state can exact those contributions consistently with the due process clause of the Fourteenth Amendment."

Congress had expressly provided that a state shall not be prohibited from levying an unemployment tax there challenged so far as the commerce clause was concerned. The Company was a Delaware corporation which had no office or property except shoe samples in Washington; it made no contracts there, it did not deliver the goods in that state but shipped them f. o. b. from outside the state; it did employ salesmen to solicit orders there who rented display rooms within the state. The record suggests as in the International Harvester case that the Company's method of doing business was adopted with the view of avoiding the legislative and judicial power of that state.

The notice of assessment was personally served upon a sales solicitor of the defendant in the State of Washington and a copy was mailed by registered mail to it at its address in St. Louis, Missouri, and the defendant made a special appearance on the ground that service on the salesman was not service on the defendant; that it was not a corporation of the State of Washington and was not doing business within the state and that it had no agent in the state upon whom service could be made, and for other reasons.

Chief Justice Stone speaking for the court said:

"But now that the capias ad respondendum has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' * * *"

Travelers Health Association v. Virginia, 1950, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154, brought before the court the jurisdiction of the state corporation commission of the State of Virginia to enter a cease and desist order of the State of Virginia against the Travelers Health Association from further solicitations or sales of certificates to Virginia

residents or advertising or using the mail for that purpose until it obtained authority in accordance with its "Blue Sky Law". Service of the notice was made by registered mail only and a special appearance was made to set aside and quash the service of summons. The Supreme Court held that such service met due process requirements and that the Association's soliciting of applications by mail met the minimum contacts yardstick and that jurisdiction existed. Perkins v. Benguet Consol. Mining Co., 1952, 342 U.S. 437, 72 S.Ct. 413, 418, 96 L.Ed. 485, extended the scope of these jurisdictional decisions from approving the service of process, jurisdiction and thus due process where the cause of action arose within the state, to a cause of action that arose outside of the forum state. In that opinion by Justice Burton it is stated:

> "Today if an authorized representative of a foreign corporation be physically present in the state of the forum and be there engaged in activities appropriate to accepting service or receiving notice on its behalf, we recognize that there is no unfairness in subjecting that corporation to the jurisdiction of the courts of that state through such service of process upon that representative. This has been squarely held to be so in a proceeding in personam against such a corporation, at least in relation to a cause of action arising out of the corporation's activities within the state of the forum."

It remained then in the case of McGee v. International Life Ins. Co., 1957, 355 U.S. 220, 78 S.Ct. 199, 201, 2 L.Ed.2d 223, for the court to unanimously approve in personam jurisdiction and due process based on service of process by registered mail to a foreign corporation whose minimum contacts with the state were the sending, by mail, of notice of premiums to the insured and his payment of premiums. Neither the original insurer or defendant ever had offices in California and so far as the record showed, defendant had never solicited or done any insurance business in California apart from the one policy. A California statute subjected foreign corporations to suit in California, service being made by

registered mail addressed to defendant's principal place of business in Texas. The plaintiff filed suit on the California judgment so obtained in a Texas court, which refused to enforce the judgment, holding it was void under the Fourteenth Amendment. The U. S. Supreme Court said:

> "Looking back over this long history of litigation a trend is clearly discernible toward expanding the premissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity.

> "Turning to this case we think it apparent that the Due Process Clause did not preclude the California court from entering a judgment binding on respondent. It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State. * * * The contract was delivered in California, the premiums were mailed from there and the insured was a resident of that State when died." 355 U.S. 222, 78 S.Ct. 201, 2 L.Ed.2d 226.

Cf. Hanson v. Denckla, 1958, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283.

Other lower U.S. courts have considered, developed and applied this trend. Lone Star Package Car. Co., Inc. v. Baltimore & O. R. Co., 5 Cir., 1954, 212 F.2d 147, was an appeal of one of the six cases involved in the district court's opinion of Insurance Co., v. Lone Star Package Car Co. Inc., and five other cases, D.C.1952, 107 F.Supp. 645, 652. One of

these originated in state court. In the last named case, after reviewing many opinions, the District Judge said:

"Undoubtedly, where the cause of action arises from the defendant's activities within the state of forum, the older rule has been relaxed, and in my opinion very little additional activity on the part of the defendant need be shown to sustain jurisdiction."

The court of appeals characterized the District Judge's opinion as "excellent". See also Enco, Inc. v. F. C. Russell Co., 1957, 210 Or. 324, 311 P.2d 737; Scholnik v. National Airlines, 6 Cir., 1955, 219 F.2d 115; Kulicke v. Rollway Bearing Co., D.C. 1955, 131 F.Supp. 572; Florio v. Powder Power Tool Co., 3 Cir., 1957, 248 F.2d 367 (state law considered); WSAZ, Inc. v. Lyons, 6 Cir., 1958, 254 F.2d 242; Westcott-Alexander, Inc. v. Dailey, 4 Cir., 1959, 264 F.2d 853. The last two actions were commenced in state court. In the WSAZ action service of process on a foreign corporation that "does business" in Kentucky could be made and was made, under its statute, on the Secretary of State; in upholding a personal judgment for libel on such service, the court said:

"While defendant was not present in the territory of the forum, it certainly had substantial contacts with it. It sought and executed contracts for the sale of advertising service to be performed and actually performed by its own act within the territory of the forum. We conclude that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" [254 F.2d 248.]

After an analysis of the decisions, the court in Westcott-Alexander said:

"If there be a jurisdictional requirement that the local activity consist of something more than 'mere solicitation,' there was engagement in other kinds of activity. * * * If, therefore, the statutes of Virginia purport to make the defendant amenable

to its process, no provision of the Federal Constitution stands in the way of its enforcement here." [264 F.2d 858.]

It is not necessary for us to determine whether "solicitation plus" or "mere solicitation" is to be the yardstick as there were other activities here set out above that place it within the "solicitation plus" doctrine.

In a Special Supplement to the Law School Record of the University of Chicago (August, 1958, Vol. 8, No. 1, page 65) is a monograph by Philip B. Kurland, Professor of Law, entitled "The Supreme Court, The Due Process Clause, and The In Personam Jurisdiction of State Courts: 1877-1958". This is one of five articles, all of which were prepared at the suggestion of a committee of the Conference of Chief Justices; the committee characterized their work in the following manner:

> "These gentlemen have devoted much time, study and thought to the preparation of very scholarly, interesting and instructive monographs on the above subjects. We wish to express our deep appreciation to each of them for his very thorough research and analysis of these problems."

The Kurland treatise surveys the decisions from 1813 through 1958; it has 293 footnotes and to the student who desires a scholarly review and keen analysis of the subject we refer him to it as well as "Recent Interpretations of 'Doing Business' Statutes", 44 Iowa L.Rev. 345, Winter 1959 and 4 Duke Law Jour. 644, Fall 1959.

By the service of the summons in this action, the circuit court of Minnehaha County obtained jurisdiction of the defendant and the order appealed from is therefore reversed.

All the Judges concur.