No. 15,782.

STECKER *v*. SNYDER ET AL.
(193 P. [2d] 881)

Decided April 26, 1948.

Mr. FRANK DELANEY, Mr. SILMON SMITH, for plaintiff in error.

Mr. ALLYN COLE, Mr. BRUCE COLE, for defendant in error Schuster.

*In Department.*

MR. JUSTICE STONE delivered the opinion of the court.

IN an action by Stecker against Snyder on a promissory note, levy was made under writ of attachment on real estate held in the name of Schuster and, in aid thereof, Schuster, the Square S Land and Cattle Company and Cole, were summoned in garnishment. Snyder was a resident of Canada and was not personally served.

It is first urged that the trial court erred in refusal to enter judgment against Snyder by default, it appearing, as counsel contends, that he had made general appearance in the case: (1) By entering into stipulation for deposit of money with the clerk of the court in lieu of the attachment, and, (2) by giving notice through his attorney of the taking of depositions.

As to (1), we need not decide whether, ordinarily, the making and filing by a party of a stipulation for release of attachment and substitution therefor of deposit of money in court, would constitute a general appearance, as here urged. Generally, when a party invokes the power of the court on the merits, or asks relief which presupposes jurisdiction, or apparently consents to jurisdiction, that constitutes a general appearance. Here the land upon which levy had been made was under contract of sale by Schuster and Snyder to the Square S Land and Cattle Company whereunder payment of the purchase price was to be made to a

depository, by which, after deduction of certain agreed costs, the full balance was to be paid to Schuster through his attorney. The stipulation was executed through counsel by the purchaser, by Snyder, Schuster and the depository, and by plaintiff, Stecker. The stipulation provided that upon payment of the purchase price to the depository an agreed portion thereof should be deposited with the court in lieu of the attachment and the remainder paid to Schuster; that the depository should thereupon release the deed of conveyance to the purchaser, and the writ of attachment be released. It was specifically stated in the stipulation that nothing therein should be construed as to in any way prejudice the rights of any parties; that the execution and filing of the stipulation should not be construed to be a general appearance in the cause by or on behalf of the defendant, Harry Snyder, on an admission on his part that he had any interest in the subject matter of the stipulation which, it was recited, he executed at the request of the purchaser. It is apparent from the contract of sale and stipulation that the actual agreement evidenced by the stipulation was between Schuster and the purchaser, and that Snyder joined, not as a party in interest, but to satisfy the purchaser and to accommodate Schuster. The stipulation had no connection whatever with the merits of the case or with the merits of the attachment and no relief or advantage was thereby sought in behalf of Snyder. It neither presupposed jurisdiction, nor indicated intent to confer jurisdiction over Snyder. On the contrary, it declared intent not to recognize such jurisdiction in the most explicit terms. Consequently it did not constitute a general appearance.

■ As to (2), Schuster and Cole in their answer to the summons in garnishment denied that Snyder had any interest in the real estate attached. That denial was traversed by plaintiff, and the attorney representing both Schuster and Snyder gave notice of taking depositions of sundry witnesses, including Snyder, to be taken

"upon the issues joined in the matter of attachment and garnishment." Schuster, not Snyder, was contesting the attachment, but whether the signing of the notice as attorney for defendant instead of as attorney for Schuster was a matter of inadvertance need not be determined. The federal rule, and that of the majority of state courts is, that an appearance by a nonresident defendant for the sole purpose of attacking an attachment or garnishment is a special appearance which does not give the court jurisdiction of the person. See annotation 55 A.L.R. 1121 et seq. Where a nonresident defendant believes that his property or property claimed to be his has been wrongfully attached, he may defend against such attachment (*La Varre v. International Paper Co.*, 37 F. [2d] 141), and may do so without conferring jurisdiction of his person if he does no more than so defend. As was said in the leading case of *Bissell v. Briggs,* 9 Mass. 462: "It would be unreasonable to oblige any man living in one state, and having effects in another state, to make himself amenable to the courts of the last state, that he might defend his property there attached."

"The plaintiff, by instituting his action and making the effectual attachment of property, offers to the defendant the alternative, first, of coming into court generally and settling all issues by submitting to the jurisdiction of the court with the attendant advantage of ending that cause of action by a final judgment, or second, of appearing specially and protecting only the property attached and settling only that question and nothing else. The adjudication will be exactly commensurate with the alternative accepted by the defendant. This result is one of fairness and justice to both parties." *Cheshire National Bank v. Jaynes,* 224 Mass. 14, 112 N.E. 500. In *People ex rel. v. District Court,* 74 Colo. 48, 218 Pac. 912, defendant did more than defend against the attachment; he appeared with motion to quash the summons and, when it was overruled, asked for, and was given, time in which to plead or answer. This both

presupposed jurisdiction and indicated intent to make general appearance. Further, in that case, motion was filed to quash the attachment on the ground of an irregularity rather than a jurisdictional ground. Plaintiff in error relies on *Everett v. Wilson*, 34 Colo. 476, 83 Pac. 211. There we said: "If a defendant separately, or in conjunction with a motion going only to the jurisdiction, invokes the power of the court on the merits, or moves to dismiss the action, or asks relief which presupposes that jurisdiction has attached, this constitutes a general appearance." Here, the depositions sought concerned not the merits, but the jurisdiction in attachment, and no relief was asked presupposing that jurisdiction had attached. The trial court properly found that Snyder had not appeared generally.

It is next urged that the court erred in holding that the defendant Snyder did not have an attachable interest in the lands upon which levy was made. The land had formerly been the property of Snyder and held in his name. In 1942 Snyder made quitclaim deed thereto to Schuster—who was the assistant secretary of the Mayo Properties Association—for the purpose of having the property, together with certain assigned life insurance policies, held as security for a loan from the association in the original sum of $64,000. On February 21, 1944, Snyder and Schuster, as parties of the first part, joined in the execution of an agreement for sale of said property to the Square S Land and Cattle Company, and for the adjustment of certain claims between the purchaser and Snyder and Schuster. Thereunder cash payments were made to Snyder and to Schuster in satisfaction of their individual claims, and the Cattle Company agreed to pay the sum of $20,000 together with interest thereon at five per cent per annum as the purchase price of the ranch on or before one year from that date. Quitclaim deed was to be deposited with the depository selected as escrow agent for delivery to the purchaser upon such payment. Provisions were made as to title, and the in-

strument was declared to be an absolute and irrevokable contract to convey and an absolute and irrevokable promise to pay the purchase price. The escrow agent was directed, after deduction of its charges, to make draft payable to Schuster for the full purchase price, when received, and to hold the deed and abstract "subject only to the direction of G. S. Schuster" in the event payment should not be made within the time specified. The escrow instructions, but not the contract, was recorded. At that time there was still unpaid on Snyder's loan from Mayo Property Association, approximately $30,000. On March 25, 1944, after this loan had been reduced to approximately $1,000.00, Snyder borrowed $28,000 from the Royal Bank of Canada, and to secure both this loan and other indebtedness on which he was then obligated, he pledged to the Royal bank as collateral, certain securities, including all those held by the Mayo Properties Association, subject only to its prior claim. Snyder wrote Schuster advising him of the assignment and asking him to acknowledge its receipt and accept the assignment. The Royal bank also wrote the Mayo Property Association giving it formal notice of the assignment. Under date of April 4, 1944, Schuster replied to the bank acknowledging receipt of notice of assignment, as well as notice of the bank's interest, and agreed to forward the collateral held by them to the bank upon payment of the Mayo loan. Such was the situation existing when on May 3, 1944, Stecker levied on the property under attachment.

Assuming it to be generally true, as urged by plaintiff in error, that upon escrow of deed, title remains in grantor until its delivery pursuant to the escrow agreement, and the rights of creditors of vendor are not affected thereby (as to which, see, annotation 117 A.L.R. 85 et seq.), we have here involved, in addition to the escrow, an absolute contract for sale of the property prior to the attachment. Schuster, who held the legal title as security, and Snyder, who held the equitable

title subject to his debt, each absolutely agreed to sell for, and the Square S Land and Cattle Company absolutely agreed to pay, the purchase price. If title was found not marketable there was an absolute covenant by Snyder to correct it. The purchaser had immediate possession and was to pay current taxes. The deed and abstracts, but not the contract of sale, were deposited in escrow with instruction for delivery upon payment of the purchase price. The contract of sale became effective immediately upon its execution. There was no provision either in the contract of sale or escrow agreement for forfeiture on failure of payment. Thereunder the equitable title passed forthwith to the purchaser, and vendors held legal title merely as protection for their vendor's lien.

Plaintiff in error urges two Colorado cases in his support. In *Wolcott v. Johns,* 7 Colo. App. 360, 44 Pac. 675, there was no written, or other contract than the escrow agreement whereunder deed from grantor and notes by grantees were deposited to be delivered upon production of abstracts of title showing right to convey. There, the entire agreement of sale was conditional upon showing of title. The deed and the agreement for sale were ineffective for any purpose until the condition had been performed, and the purchasers had no title nor interest, legal or equitable, until the agreement and deed became effective. Until then, the property was subject to execution or attachment by creditors of grantor. In *Galvin v. Stokes,* 68 Colo. 376, 191 Pac. 117, also, the agreement to deliver the securities was conditional, and until performance of the conditions, there was no effective agreement whatever between the parties.

In the instant case, prior to the attempted attachment, the right to receive the purchase price, which was all the right remaining to Snyder, had in effect been assigned by him to Schuster, to whom the money had been made payable, as trustee for Snyder's creditors,

the Mayo Corporation and the Royal Bank of Canada. Except as changed by recording acts, an attaching creditor stands in his debtor's shoes. An attaching creditor of a vendor, with notice, acquires only the right to recover the unpaid balance of the purchase price still due the vendor. Where the vendor has assigned his interest in the purchase price, the attachment must fail. 2 Freeman on Judgments (5th ed.), p. 2028, §965. *Jackson v. Snell,* 34 Ind. 241; *McGregor v. Matthis,* 32 Ga. 417.

■ Lack of notice is urged. Lack of notice justifies reliance upon apparent title of record, and Snyder had no apparent title to the property attached. Record title in Schuster gave notice of his rights before the sale, and the recorded escrow agreement and possession by the Square S Land and Cattle Company gave notice of its rights, sufficient to put a purchaser or creditor on inquiry which would have revealed its prior purchase of the property attached. *Campbell v. First National Bank,* 22 Colo. 177, 43 Pac. 1007. The contract provision for payment of the purchase price to Schuster was both evidence and notice of the assignment of the purchase price to him. Whether the right was personal or as trustee was not material.

■ It is finally urged that the assignment to the Royal Bank was invalid because Snyder purported to assign a $20,000 secured note of the Square S Land and Cattle Company held by Schuster as collateral, which, it is said, cannot be construed as a pledge of money due under a contract of sale. There was no $20,000 note or any note of the cattle company held as collateral, but only the $20,000 purchase price of the ranch, payable under contract of sale hereinabove referred to. In Snyder's deposition he testified as to the cattle company being indebted to him for the sum of $20,000 as evidenced by a promissory note. He further stated, with regard to that note, that he had owned property in Colorado which he had deeded to Schuster as collateral, and that

he had sold the property to the cattle company for $20,-000 under contract. When asked if the company gave a note as evidence of the purchase price indebtedness, he replied, "They made a contract note. The contract and the note was all one." Snyder's intent to assign his interest in the purchase price is patent.

The writ was properly dismissed, and the judgment is affirmed.

MR. CHIEF JUSTICE BURKE and MR. JUSTICE HAYS concur.