CITIZENS COMMITTEE FOR the HUDSON VALLEY and Sierra Club, Plaintiffs,

v.

John VOLPE, individually and as Secretary of Transportation of the United States, Stanley S. Resor, individually and as Secretary of the Army of the United States, and William F. Cassidy, individually and as Chief of Engineers, Corps of Engineers of the U. S. Army, Defendants.

VILLAGE OF TARRYTOWN, NEW YORK, Plaintiff,

v.

John VOLPE, individually and as Secretary of Transportation of the United States, Walter F. Hickel, individually and as Secretary of the Interior of the United States, Stanley S. Resor, individually and as Secretary of the Army of the United States, and William F. Cassidy, individually and as Chief of Engineers, Corps of Engineers of the U. S. Army, Defendants.

CITIZENS COMMITTEE FOR the HUDSON VALLEY and Sierra Club, Plaintiffs,

v.

J. Burch McMORRAN, individually and as Commissioner of the Department of Transportation of the State of New York, Defendants.

VILLAGE OF TARRYTOWN, NEW YORK, Plaintiff,

v.

J. Burch McMORRAN, individually and as Commissioner of the Department of Transportation of the State of New York, Defendants.

Nos. 69 Civ. 295, 354, 305 and 448.

United States District Court
S. D. New York.
Feb. 27, 1969.

Winer, Neuburger & Sive, New York City, for plaintiffs.

Louis J. Lefkowitz, Atty. Gen., for defendant state of New York; by Joel H. Sachs and Mark T. Walsh, New York City, of counsel.

EDELSTEIN, District Judge.

## OPINION

Four separate actions challenging on various grounds the construction of the proposed Hudson River Expressway were commenced in this court. The plaintiffs include the Citizens Committee for the Hudson Valley and the Sierra Club, conservation organizations having members who reside in the area in which the Expressway is to be located. The Citizens Committee is a local, unincorporated association, whereas the Sierra Club is a non-profit corporation organized in California with various local branches located throughout the United States. The third plaintiff is the Village of Tarrytown, a municipal corporation created by and existing under the laws of the State

of New York, and situated in the proposed path of the Expressway. The defendants Volpe, Resor, Cassidy, and McMorran are respectively the Secretary of Transportation of the United States, the Secretary of the Army of the United States, the Chief of Engineers, Corps of Engineers of the United States Army, and the Commissioner of the Department of Transportation of the State of New York. Together the defendants are among the various federal and state officials who have or are alleged to have the duty to pass on applications to perform work in connection with the Expressway. The State of New York has intervened in two actions.

Generally the plaintiffs in each action are seeking an order barring the construction of the Expressway on the grounds that it has not been validly authorized pursuant to the applicable statutory provisions, that administrative decisions rendered in favor of its construction are arbitrary and capricious, and that the statute under which it was authorized, Section 340–c of the New York Highway Law, McKinney's Consol. Laws, c. 25, is unconstitutional. Insofar as all of these actions involve common questions of law and of fact they have been ordered consolidated pursuant to Rule 42, Federal Rules of Civil Procedure.

The Expressway itself is planned to extend for approximately nine miles along the east shore of the Hudson River from a point near the Tappan Zee Bridge at Tarrytown, New York, north to Crotonville, New York. Approximately 22,-000 feet of the road will rest on fill extending at the widest point 1300 feet into the river. The river at this point is 10,000 feet wide. The project as planned will include the construction of recreational and park facilities along the river together with necessary access facilities.

These matters are now before this court on an application, brought on by an order to show cause, for a preliminary injunction enjoining the Army Corps of Engineers from delivering to the Department of Transportation of the State of New York, pursuant to 33 U.S.C. § 403 the permit which it has issued and which would authorize the fill operations to begin. There are also jurisdictional motions before the court. These need not be reached now.

This court conducted a full hearing on this matter on February 19, 1969. It is this court's conclusion that a preliminary injunction should not issue in this case.

 It is hornbook law that a motion for a preliminary injunction is addressed to the discretion of the court and that the remedy itself is an extraordinary one that is not granted absent a strong showing of need by the plaintiff. *See, e. g.,* American Metropolitan Enterprises of New York, Inc., v. Warner Bros. Records, Inc., 389 F.2d 903 (2d Cir. 1968); Hershey Creamery Co. v. Hershey Chocolate Corp., 269 F.Supp. 45 (S.D.N.Y.1967); Hudson Pulp & Paper Corp. v. Swanee Paper Corp., 223 F. Supp. 617 (S.D.N.Y.1963). There are, in this regard, four concepts which the court should take into consideration and balance before granting this relief: the probability that plaintiff will eventually succeed on the merits; the presence of some irreparable injury to the plaintiff; the injury to defendant; and the public interest in the granting of the preliminary injunction. Garland v. Ruskin, 249 F.Supp. 977 (S.D.N.Y.1965); 7 Moore, Federal Practice ¶ 65.04.

 In the instant case it is far from clear that plaintiff will succeed on the merits. All parties agree that approval of the federal government is required before New York can begin filling in the river. However, the plaintiffs initially contend that the Expressway project was incorrectly treated by the Departments of the Army and Interior as a matter that is governed by 33 U.S.C. § 403. Rather, plaintiffs argue that the Expressway should have been treated as requiring the consent of Congress under

33 U.S.C. § 401, insofar as the road includes dikes and causeways, and the approval, under 49 U.S.C. § 1655, of the Department of Transportation, insofar as the road includes bridges. But inasmuch as this project apparently will not substantially interfere with navigation along the river, and inasmuch as the Department of Transportation has already had an opportunity to examine this project and has interposed no objections, it is doubtful that these arguments will prevail. It is equally doubtful that plaintiffs' unelaborated arguments relating to the asserted unconstitutionality of § 340–c of the New York Highway Law will prevail.[1]

Additionally, the plaintiffs are seeking review of the approvals given to the Expressway project by defendants Resor and Cassidy and by former Secretary of the Interior Udall. But plaintiffs chances here too are limited considering the admittedly narrow scope of review that is available to a court in matters such as these. Consolo v. Federal Maritime Commission, 383 U.S. 607, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966); Wong Wing Hang v. Immigration and Naturalization Service, 360 F.2d 715 (2d Cir. 1966).

These doubts as to whether or not the plaintiffs will ultimately be able to succeed undermine their motion for preliminary relief. I. T. S. Industria Tessuti Speciali v. Aerfab Corp., 280 F.Supp. 581 (S.D.N.Y.1967).

In addition to the plaintiffs' failure to demonstrate a reasonable probability of success at trial, they have also failed to make a strong showing of what immediate and irreparable harm will be suf-fered by them should their motion be denied. Foundry Services v. Beneflux Corp., 206 F.2d 214 (2d Cir. 1953); Hudson Pulp & Paper Corp. v. Swanee Paper Corp., *supra*.

Various items of damage are asserted by plaintiffs: loss of residential streets, loss of homes, loss of industrial and commercial establishments, including an employer of five hundred persons, loss of a fire house, loss of a commuter parking lot, loss of a portion of the grounds of a parochial school, and loss of land from the tax rolls. But all of these items are highly conjectural; the final path of the overland portion of the Expressway has not yet been determined. Further, and more important, there are adequate legal remedies which can provide compensation for these losses and in these circumstances an injunction should not issue.

Plaintiffs argue that homes not destroyed by the Expressway but which are located nearby will suffer a decrease in value. They also argue that the road will increase the surrounding levels of air pollution and noise. But these too are speculative assertions unsupported by probative evidence.[2]

The effects of the filling operation itself have not been shown to give rise to claims that are any more substantial. No land will have to be condemned as a result of the fill since the State already owns the bed of the river. It has not been shown that particular historical, scenic, or recreational resources will be destroyed; and no proof was presented that marine life will be unduly disturbed.

On the other hand, it is reasonably clear that the Expressway has received

1. 33 U.S.C. § 401 in part makes it unlawful to construct bridges, dams, dikes or causeways over or in navigable rivers without the consent of Congress. 33 U.S.C. § 403 provides that it is unlawful to fill in any navigable water without the recommendation of the Chief of Engineers and the authorization of the Secretary of the Army. 49 U.S.C. § 1655 transfers to the Secretary of Transportation the powers formerly held by the Chief of Engineers and the Secretary of

the Army under 33 U.S.C. § 525 to approve bridges built across navigable rivers. Section 340–c of the New York Highway Law generally describes the route of the Expressway.

2. This court expressly assumes for the purpose of these preliminary injunction motions only, that the plaintiffs have standing to protest all of the above mentioned items of damage. Quaere.

careful review and that appropriate measures designed to safeguard the natural state of the river, as well as make its benefits more widely available to the public, have been incorporated into the plans for the project. The New York State Conservation Department, the Water Resources Commission of the State of New York, the Hudson River Valley Commission, and the Secretary of the Interior, all of whom are charged with responsibilities in support of conservation, have all passed on the project. Public hearings have been held on it. And the permit authorizing the fill operation includes the requirements that all possible steps be taken to prevent undue siltation and turbidity in the river, that a type of fill that will not cause water pollution will be used, that the integrity of a natural cove situated along the road's path will be maintained, and that park, recreation and access facilities will remain as an integral part of the project and be constructed along with the transportation facility.

Upon final analysis, then, the only undeniable result of the issuance of the permit in question which the plaintiffs have demonstrated is the fact that an expressway will be constructed. If this alone, when balanced against the other factors under consideration, would suffice to justify the granting of a preliminary injunction then it is doubtful whether the construction of any road would ever be commenced on schedule. *Cf.* Garland v. Ruskin, *supra,* a case involving an unsuccessful attempt to restrain further construction on an urban renewal project.

In determining whether or not to issue a preliminary injunction it is helpful to consider the relative conveniences of the parties as they will be affected by the decision. *See, e. g.,* Ames v. Associated Musicians of Greater New York, Local 802, A.F.M., 251 F.Supp. 80, 85 (S.D. N.Y.) aff'd. 359 F.2d 777 (2d Cir. 1966).

The harm to the plaintiffs has already been discussed. On the other side, while the federal government will suffer no harm if an injunction should issue since this project is entirely state financed, it is undisputed that each month's delay in construction will substantially increase the cost of the project to New York.

Finally, when an application is made for a preliminary injunction the court will weigh, together with all of the other factors discussed, the injury or inconvenience which may result to the public if the application is granted. Indeed, if an injunction will adversely affect the public interest in a manner that cannot be compensated by a security bond, then on this ground alone the application for an injunction can be denied. Yakus v. United States, 321 U.S. 414, 440–441, 64 S.Ct. 660, 88 L.Ed. 834 (1944); Tennessee Valley Authority v. Tennessee Elec. Power Co., 90 F.2d 885 (6th Cir.) cert. denied 301 U.S. 710, 57 S.Ct. 945, 81 L. Ed. 1363(1937).

In the case at bar it is apparent that a new road is needed in the area in question to relieve traffic congestion, and as already noted, the Expressway project includes the construction of new park and recreational facilities combined with improved access to the river shore. In this connection this court finds that existing access to the river is limited by the presence of Penn Central railroad tracks on the water's edge.

This court is not unmindful of the necessity of protecting this country's precious natural resources. Nor is the court unfeeling towards these plaintiffs' concerns. The court, however, has no choice but to apply the law to the facts as it finds them to be. The plaintiffs, by applying for drastic injunctive relief assumed a heavy burden of persuasion that they are entitled to that relief. They have failed to carry that burden. Accordingly, the motions for preliminary injunction are denied. So ordered.