CITIZENS COMMITTEE FOR the HUD-
SON VALLEY and Sierra Club,
Plaintiffs,

v.

John VOLPE, individually and as Secre-
tary of Transportation of the United
States, Stanley S. Resor, individually
and as Secretary of the Army of the
United States, and William F. Cassidy,
individually and as Chief Engineers,
Corps of Engineers of the U. S. Army,
Defendants.

VILLAGE OF TARRYTOWN, NEW
YORK, Plaintiff,

v.

John VOLPE, individually and as Secre-
tary of Transportation of the United
States, Walter F. Hickel, individually
and as Secretary of the Interior of the
United States, Stanley S. Resor, individ-
ually and as Secretary of the Army of
the United States, and William F. Cas-
sidy, individually and as Chief of Engi-
neers, Corps of Engineers of the U. S.
Army, Defendants.

CITIZENS COMMITTEE FOR the HUD-
SON VALLEY and Sierra Club,
Plaintiffs,

v.

J. Burch McMORRAN, individually and
as Commissioner of the Department of
Transportation of the State of New
York, Defendants.

VILLAGE OF TARRYTOWN, NEW
YORK, Plaintiff,

v.

J. Burch McMORRAN, individually and
as Commissioner of the Department of
Transportation of the State of New
York, Defendants.

Nos. 69 Civ. 295, 354, 305 and 448.

United States District Court
S. D. New York.

April 3, 1969.

Winer, Neuburger & Sive, New York City, for plaintiffs.

Louis J. Lefkowitz, Atty. Gen., by Joel H. Sachs, Mark T. Walsh, New York City, of counsel, for defendants.

## OPINION

EDELSTEIN, District Judge.

These four consolidated actions all challenge the construction of the proposed Hudson River Expressway. In a previous opinion, 297 F.Supp. 804, this court denied the plaintiffs' motion for a preliminary injunction enjoining the Army Corps of Engineers from delivering to the Department of Transportation of the State of New York the permit which would allow construction of the road to commence. Remaining for decision are two motions of defendant McMorran, Commissioner of the Department of Transportation of the State of New York, to dismiss the two actions brought against him in his official capacity on the ground that he is immune from suit under the doctrine of sovereign immunity.

The claims—more fully described in this court's earlier opinion—asserted against McMorran in sum are:

1. That because the proposed Expressway will in part extend into and over the Hudson River, all of the parties are agreed that permission to build the road must be obtained from federal authorities. Proceeding under 33 U.S.C. § 403 on the theory that all that is involved is a fill operation, the state applied only to the Department of the Army for a permit. The plaintiffs contend that the state's application should have been addressed instead both to Congress, under 33 U.S.C. § 401, because the Expressway project includes dikes and causeways, and to the Department of Transportation under 49 U.S.C. § 1655, because the project includes bridges;

2. That the Expressway is generally authorized by Section 340c of the New York Highway Law, McKinney's Consol. Laws, c. 25 and the plaintiffs allege that this statute violates the Fourteenth Amendment and that construction of the Expressway would violate plaintiffs' Fifth Amendment rights.

█ A consideration of defendants' claim of immunity at the very outset must note that these suits have been brought against McMorran in his official capacity as Commissioner of the Department of Transportation, an instrumentality of the State of New York,[1] and not against the state itself. But a named defendant who is sued in his official capacity as Commissioner of a state

---

1. It is clear and undisputed that the defendant is the director of a department which is an integral part of the state government. New York Transportation Law §§ 11, 14, 61A McKinney's Consol. Laws, c. 61–a, §§ 11, 14.

instrumentality for relief [2] which realistically can be granted only against the state itself, stands in the same posture as the state, and the state's immunity, therefore, can be raised by the defendant of record. Thus this court finds that McMorran has standing to assert the defense of sovereign immunity. Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945); In re Ayers, 123 U.S. 443, 8 S.Ct. 164, 31 L.Ed. 216 (1887); S. J. Groves & Sons Co. v. New Jersey Turnpike Authority, 268 F.Supp. 568 (D.N.J. 1967).

■■ The merits of this defense can now be reached. It is settled that in the absence of its consent a state not only is immune from suits brought against it by citizens of other states, U.S.Const. Amend. XI, but it is also immune from suits brought against it by its own citizens, even when suit is based on issues arising under federal law. Parden v. Terminal Ry., 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964); Hans v. Louisiana, 134 U.S. 1 (1890); Clark v. Washington, 366 F.2d 678 (9th Cir. 1966); DeLong Corp. v. Oregon State Highway Com'n., 233 F.Supp. 7 (D. Ore. 1964), aff'd 343 F.2d 911 (9th Cir. 1965), cert. denied 382 U.S. 877, 86 S.Ct. 161, 15 L.Ed.2d 119 (1965). Most often whether states have given their consent to be sued in federal district courts and whether their alleged consent to be sued was intended to apply to any particular case is considered to be a matter of state law. E. g., Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 466–470, 65 S.Ct. 347, 89 L.Ed. 389 (1945); Palmer v. Ohio, 248 U.S. 32, 39 S.Ct. 16, 63 L.Ed. 108 (1918). The most recent learning, however, holds that a state can waive its immunity from suit in federal courts by knowingly and clearly entering an area regulated, pursuant to its constitutional authority, by Congress. Whether the state's action in so doing constitutes a waiver of its immunity is a question to be decided by federal law. Parden v. Terminal Ry., supra; Petty v. Tennessee-Missouri Bridge Com'n., 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1958); Huckins v. Board of Regents, 263 F.Supp. 622 (D.Mich.1967); Lauritzen v. Chesapeake Bay Bridge and Tunnel Dist., 259 F.Supp. 633 (E.D.Va.1966); Cocherl v. Alaska, 246 F.Supp. 328 (D. Alaska 1965). Cf. Road Review League Town of Bedford v. Boyd, 270 F.Supp. 650 (S.D.N.Y.1967); DeLong Corp. v. Oregon State Highway Com'n., supra.

The plaintiffs claim "that when a state goes into a field which is expressly reserved by the Federal Constitution to Federal and Congressional control—such as navigable waters—it must obey the same Federal laws that any other entity going into that field must obey." They contend that the cases cited supra support their argument that New York, by applying for a permit to construct the Expressway, has waived its immunity from suit in federal district courts with respect to that permit. While the court agrees that federal law is determinative of the question of waiver in this case, it does not agree that the cited cases support the plaintiffs in the matter at bar.

Petty v. Tennessee-Missouri Bridge Com'n., supra, and Parden v. Terminal Ry., supra, were both decided by the Supreme Court. Petty was a Jones Act suit arising out of the death of plaintiff's husband who had been killed while working aboard a Mississippi River ferryboat owned by the defendant, a bi-state commission created pursuant to a congressionally approved compact entered into by Tennessee and Missouri. The compact included provisions giving to the defendant the capacity to sue and be sued and insuring that federal jurisdiction over navigable waters would not be diminished by it. The court rejected the defense of sovereign immunity, stated that construction of the compact was a question of federal law, and held that by entering into the compact the states had

2. Essentially the plaintiffs seek a permanent injunction against the construc-   tion of the Expressway and the taking of any property in connection therewith.

waived their immunity. *Parden* was an FELA action brought by employees of an interstate railroad owned by the State of Alabama. Here there was no compact, but the FELA specifically created causes of action in favor of railroad employees against their employers, and the Act, by its terms, was applicable to every common carrier. As a matter of statutory construction the court held that Congress had intended to include state-owned railroads operating in interstate commerce within the purview of the FELA and as a matter of constitutional law the Court also held that Congress had the power to make FELA applicable to the states. The Court thereupon found that Alabama, by engaging in the business of railroading in interstate commerce, waived its sovereign immunity and consented to a suit brought in a federal district court by employees of the railroad under the FELA.

■ The plaintiffs are correct in arguing that *Petty* and *Parden* represent advances in the law which tend to limit the boundaries of the defense of sovereign immunity. But the limits have not been boundlessly extended as has been suggested by the plaintiffs. To be sure, the court in *Petty* departed from the traditional approach of applying state law to the issue of consent and intimated a broad approach to the question of a state's waiver of immunity when it leaves the sphere that is exclusively its own and enters into activities subject to Congressional regulation. But the court in *Parden*, although considering its broad approach to the doctrine of sovereign immunity, nevertheless clearly held that it did not reject the doctrine of sovereign immunity in cases in which a state merely acted in an area subject to some form of federal control. *Cf.* Road Review League Town of Bedford v. Boyd, *supra;* DeLong Corp. v. Oregon State Highway Com'n., *supra.* Rather, a state will be held to have waived its immunity only when it has clearly and

directly entered a sphere of operation subject to causes of action specifically created by Congress in favor of a specific class, for example, the causes of action created by the FELA. Private Suits against States in Federal Courts, 33 U. Chi.L.Rev. 331 (1966).

Huckins v. Board of Regents, *supra,* and Cocherl v. Alaska, *supra,* illustrate this point. Both cases involved ships owned and operated by states and, in both, Jones Act claims were joined with claims based upon general maritime tort law. Adhering to the Supreme Court's approach in *Parden*, in both cases the respective district courts held that the general maritime claims, but not the Jones Act claims, were barred by sovereign immunity. By operating ships in navigable waters the states had submitted themselves to an act of federal regulation which specifically created causes of action in favor of injured seamen. This same rationale did not apply to the general maritime claims which merely arose under the common law of admiralty.

Plaintiffs place great reliance on Lauritzen v. Chesapeake Bay Bridge and Tunnel Dist., *supra.* There, the plaintiff's ship had collided with a navigational light structure that had been part of the bridge-tunnel which had been constructed by the defendant pursuant to a permit issued by the Army Corps of Engineers. The permit that had been granted for the project had conditions attached to it which, among others, placed upon the defendant the duty to maintain required navigational aids. The court held that suit was not barred by sovereign immunity.

*Lauritzen,* however, does not go as far as the plaintiffs suggest. The *Lauritzen* court recognized that the statute involved in *Parden* had expressly created a cause of action in favor of the plaintiffs there and that this was a central factor in the Supreme Court's decision. The statutes involved in *Lauritzen* [3] do not contain this

---

3. The court seems to have relied upon 33 U.S.C. § 401 et seq., which relate to the protection of navigable waters and harbors.

factor. But the court nevertheless found that these statutory provisions had in other cases [4] been held by implication to create civil causes of action in favor of claimants injured by a violation of these statutory provisions. Accordingly, the court concluded that entry by the state into an area regulated by federal statutes yields a waiver of sovereign immunity when the claimant is a member of the class intended to be protected by the statute and when that statute gives him a cause of action.

Assuming, *arguendo*, that *Lauritzen's* application of *Parden* is correct, it still does not support the plaintiffs in the case at bar. The suit in *Lauritzen* arose out of an accident on navigable waters involving a navigational aid which the defendant had been obligated to maintain for the benefit of passing vessels. The court reasoned that the plaintiff there, a ship owner, was clearly one of the class of persons that the federal regulations were designed to protect. Thus the violation of a duty imposed by those regulations was sufficient to create a cause of action in his favor. The instant case, on the other hand, is one brought to bar the construction of the proposed Expressway. No cause of action is given to these plaintiffs by the statutes in question. The statutes merely mandate that the state adhere to certain procedures before building the Expressway in question. Even if New York may have waived its immunity from suit in federal district courts arising out of damage caused by its failure to comply with the conditions contained within the permit granted to it, in the circumstances of this case there is no basis for holding that the federal statutes relied on by plaintiffs specifically create a cause of action in their favor. It is still the law that, as previously noted, without special factors, a state is immune from suit in federal district court even when the suit can be said to arise under federal law. Hans v. Louisiana, *supra.*

The doctrine of sovereign immunity is not novel or court created. In the ratifying convention the Article on the Judiciary was looked upon with alarm and consternation by the Anti-Federalists. They feared that the jurisdiction of the federal courts might extend to citizens of a state suing a different state. Marshall, in the Virginia Convention, had quieted George Mason's concern on this score by saying that it was not rational to presume that a sovereign power, like a state, could be dragged before a federal court. A state might be a plaintiff, but it could not be made a defendant in a suit brought by an individual. An individual seeking redress against a state could have recourse by petition to the state legislature.

Randolph, when presenting the Virginia Plan in Philadelphia, spoke of the jealousy of the states regarding their sovereignty as a fact thoroughly familiar to all. A related idea was held by Alexander Hamilton, who declared that the fears of the Anti-Federalists were predicated upon a mistaken notion, as it was inherent in the very nature of sovereignty not to be amenable to the suit of an individual without its own consent.

In a word, the historical rational for the doctrine of sovereign immunity as well as its legal basis in our law was as well put as it could have been in THE FEDERALIST No. LXXXI by Hamilton:

"It is inherent in the nature of sovereignty not to be amenable to the suit of an individual *without its consent.* This is the general sense, and the general practice of mankind; and the exemption, as one of the attributes of sovereignty, is now enjoyed by the government of every State in the Union. Unless, therefore, there is a surrender of this immunity in the plan of the convention, it will remain with

4. The court cited United States v. Perma Paving Co., 332 F.2d 754 (2d Cir. 1964) ; Morania Barge No. 140, Inc., v. M. & J. Tracy, Inc., 312 F.2d 78 (2d Cir. 1962) ;

Reading Co. v. Pope & Talbot, Inc., 192 F.Supp. 663 (E.D.Penn.1961), aff'd. 295 F.2d 40 (3rd Cir. 1961).

the States, and the danger intimated must be merely ideal. The circumstances which are necessary to produce an alienation of state sovereignty were discussed in considering the article of taxation, and need not be repeated here. A recurrence to the principles there established will satisfy us, that there is no color to pretend that the state government would, by the adoption of that plan, be divested of the privilege of paying their own debts in their own way, free from every constraint but that which flows from the obligations of good faith. The contracts between a nation and individuals are only binding on the conscience of the sovereign, and have no pretension to a compulsive force. They confer no right of action independent of the sovereign will. To what purpose would it be to authorize suits against States for the debts they owe? How could recoveries be enforced? It is evident that it could not be done without waging war against the contracting State; and to ascribe to the federal courts by mere implication, and in destruction of a pre-existing right of the state government, a power which would involve such a consequence, would be altogether forced and unwarrantable." (emphasis Hamilton's)

Without presuming to announce the validity or invalidity of the doctrine that the states were sovereign it must be concluded that it was unquestionably the ruling idea in 1788.

To what extent the doctrine of sovereign immunity forged by our Fathers must yield to the change of time can only be decided by the passage of time itself. Mr. Lincoln, in his Cooper Institute speech, laid down solid principles in interpreting the work of our Fathers. "I do not mean to say that we are bound to follow implicitly in whatever our Fathers did; to do so would be to discard all the light of common experience, to reject all progress, all improvements. What I do say is, that if we

would supplant the opinions and policy of our Fathers, in any case, we should do so upon evidence so conclusive, and arguments so clear that even their great authority fairly considered and weighed cannot stand." [5] Only time will tell whether the evidence ever will be so conclusive and the argument so clear that the Fathers' doctrine of the states' sovereign immunity no longer will be permitted to prevail. There can be no doubt, however, that when the Constitution was adopted it was with the clear understanding that a sovereign state could not be sued in a federal court without its own consent. It is not for one district court whose jurisdiction is limited to overturn a doctrine of nearly two hundred years' standing.

The defendant's motions as to the plaintiffs' first claim, accordingly, are granted.

██ Plaintiffs' second contention is that Section 340c of the New York Highway Law is unconstitutional in that it violates the Fourteenth Amendment and that to construct the Expressway is a violation of their Fifth Amendment rights. Whether or not the plaintiffs' allegations are eventually proved to be correct, it has long been the law that when a state official attempts to proceed under a statute which is in violation of the federal Constitution, he is deemed stripped of his official character and may be subjected in his individual capacity to a suit for an injunction barring his enforcement of the statute. Sovereign immunity is not a bar to such an action even though, in effect, an injunction against the state official works as an injunction against the state. *E. g.*, Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); Louisiana State Board of Education v. Baker, 339 F.2d 911 (5th Cir. 1964); Warner v. Board of Trustees of Police Pension Fund, 277 F. Supp. 736 (E.D.La.1967). For this reason the defendant's motions relating to the plaintiffs' second claim are denied.

So ordered.

5. Lincoln's Works, Vol. i, p. 604.