VAN HOVEN COMPANY, Inc., Morris Rifkin & Sons, Inc., St. Paul Dressed Beef, Inc., G. Bartusch Packing Company, and Landy Packing Company, Plaintiffs,

v.

Maurice STANS, Secretary of Commerce of the United States and Packerland Packing Company, Defendants.

No. 3–70 Civ. 261.

United States District Court,
D. Minnesota,
Third Division.

Nov. 9, 1970.

David W. Nord and Carl Cummins, Jr., St. Paul, Minn., for plaintiffs.

Stephen Palmer, Asst. U. S. Atty., Minneapolis, Minn., for Secretary of Commerce.

David L. Grannis, Jr. and Patrick A. Farrell, South St. Paul, Minn., for Packerland Packing Co.

DEVITT, Chief Judge.

Three issues are presented by defendant Packerland Packing Company's motions to set aside the service of process and for a change of venue, and by plaintiffs' motion for a preliminary injunction.

Plaintiff corporations are engaged in the business of meat packing in South St. Paul, Minnesota. They have commenced this action for declaratory judgment and injunction against Maurice Stans, Secretary of Commerce of the United States and Packerland Packing Company, a Wisconsin corporation engaged in meat packing.

The complaint alleges that Stans, acting in his capacity as administrator of the Public Works and Economic Development Act of 1965 [1] has exceeded the statutory limitations of his authority by granting to Packerland a loan so that it might construct a new meat packing plant in South St. Paul, Minnesota.[2]

Federal Rules of Civil Procedure provides as follows:

"(d) *Summons: Personal Service.* The summons and complaint shall be served together. The plaintiff shall furnish the person making service with

---

1.  42 U.S.C. §§ 3121–3226.

2.  The statute authorizes the Secretary of Commerce, among other things:
    "To purchase evidences of indebtedness and to make loans * * * to aid in financing any project within a redevelopment area for the purchase or development of land and facilities * * for industrial or commercial usage, including the construction of new buildings, the rehabilitation of abandoned or unoccupied buildings, and the alteration, conversion, or enlargement of existing buildings." 42 U.S.C. § 3142.

such copies as are necessary. Service shall be made as follows:

"(3) Upon a domestic or foreign corporation or upon a partnership or other unincorporated association which is subject to suit under a common name, by delivering a copy of the summons and of the complaint to an officer, *a managing or general agent*, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant. (Emphasis added.)"

Although service of process was made by delivering a copy of the summons and complaint to Michael Wisneiski a bookkeeper employee of Packerland at Green Bay, Wisconsin, who was neither an officer of the corporation nor authorized to accept service, the pleadings, records and affidavits reflect that Wisneiski advised the United States Deputy Marshal responsible for making service that he was the office manager and he in fact appeared to be the agent in charge of Packerland's Green Bay headquarters in the absence of company officers.[3] It is also significant that the Deputy Marshal diligently sought, without success, to locate an officer of the company upon whom to make service before electing to make service upon Wisneiski. See Merchants Transfer & Warehouse Co. v. Ragan, 170 F.2d 987 (10th Cir. 1948).

■ Service of process upon Wisneiski was proper to establish personal jurisdiction over Packerland. It is sufficient to satisfy the requirements of Rule 4(d) (3) that a responsible person who declared himself to be in charge of the office was served, particularly where there is no showing that any technical errors allegedly committed in serving the summons and complaint were prejudicial to the defendant. Giordani v. Hoffman, 295 F.Supp. 463 (E.D.Pa.1969); Noerr

Motor Freight, Inc. v. Eastern R. R. Presidents Conference, 113 F.Supp. 737 (E.D.Pa.1953). Notice is the keystone to proper service under Rule 4(d) (3) and there is no doubt that Packerland was adequately informed of the commencement of this action. See Jennings v. McCall Corp., 320 F.2d 64 (8th Cir. 1963); Wright & Miller, 4 Federal Practice and Procedure § 1101, 382–387 (1969).

The second issue relates to the properness of this District as the venue for the action. Subsection (c) of 28 U.S.C. § 1391, a venue statute of general applicability, provides as follows:

"(c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."

■ Packerland is "doing business" in this District as evidenced by the fact that the corporation has two resident agents in Minnesota who purchase from one thousand (1,000) to four thousand (4,000) head of cattle every week for Packerland on the South St. Paul market. The statutory requirement for venue is satisfied. See, *e. g.*, McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); Jennings v. McCall Corp., supra; Houston Fearless Corp. v. Teter, 318 F.2d 822 (10th Cir. 1963).

Furthermore we are not impressed with Packerland's contention that there should be a change of venue and the case transferred to the Eastern District of Wisconsin for the convenience of the parties and witnesses. Packerland has not adequately supported its request for a change of venue and an examination of the factual and substantive issues set forth in the pleadings indicates that the balance of convenience and the interest

3. The affidavit of Russell C. Knight, Deputy United States Marshal states:

"I was advised by the Office Manager, a Mr. Michael Wisneski (sic), that no company officers were available for service. I then made service on Mr. Wisneski (sic) who advised me that he was Office Manager and appeared to be the agent in charge of the Packerland Packing Company office in the absence of the company officers."

of justice favor retention of this case for trial in this District. See Wyndham Associates v. Bintiff, 398 F.2d 614 (2nd Cir. 1968), cert. denied, 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438 (1968); Quality Beverage Co. v. Sun-Drop Sales Corp. of America, 291 F.Supp. 92 (D.C.Wis. 1968); Savage v. Kaiser Motors Corp., 116 F.Supp. 433 (D.C.Minn. 1953).

The third issue concerns plaintiffs' motion for a preliminary injunction to enjoin Packerland from accepting or using the proceeds of the government loan to construct a new meat packing facility in South St. Paul. It is well settled that a motion for a preliminary injunction is addressed to the discretion of the court and that the remedy itself is an extraordinary one that is not to be granted absent a strong showing of need by the plaintiff. E. W. Bliss Co. v. Struthers-Dunn, Inc., 408 F.2d 1108 (8th Cir. 1969); American Metropolitan Enterprises of New York, Inc. v. Warner Bros. Records, Inc., 389 F.2d 903 (2nd Cir. 1968). In this regard, there are four factors which a court should take into consideration and balance before granting this relief: (1) the probability that the plaintiff will eventually succeed on the merits; (2) the presence of immediate and irreparable injury to the plaintiff; (3) the possibility of injury to the defendant; and (4) the public interest in the granting of the preliminary injunction. See Industrial Bank of Washington v. Tobriner, 405 F.2d 1321 (D.C. Cir. 1968); Benson Hotel Corp. v. Woods, 168 F.2d 694 (8th Cir. 1948); Citizens Committee for Hudson Valley v. Volpe, 297 F.Supp. 804 (S.D.N.Y. 1969); Exchange National Bank of Chicago v. Abramson, 278 F.Supp. 849 (D. Minn. 1968); 7 Moore, Federal Practice ¶ 65.-04.

In the instant case it is far from clear that plaintiffs will succeed on the merits. Plaintiffs rely on the following limitation in the Public Works and Economic Development Act to support their motion for preliminary injunction:

"No financial assistance under this chapter shall be extended to any proj-

ect when the result would be to increase the production of goods, materials, or commodities, or the availability of services or facilities when there is not sufficient demand for such goods, material, commodities services, or facilities, to employ the efficient capacity of existing competitive commercial or industrial enterprises." 42 U.S.C. § 3212.

Although numerous affidavits have been submitted which indicate that the packing plants presently operating in South St. Paul are not operating at maximum capacity, there is conflicting evidence as to the volume of livestock which will be shipped to the stockyard in South St. Paul in the future, some of it showing that the volume will increase. Moreover, it is reasonable to conclude that the Secretary of Commerce and his staff made a complete study of all the facts relating to this situation, including the effect on existing businesses, prior to the granting of the loan to Packerland. Plaintiffs no doubt were afforded an opportunity to have their arguments considered at that time and the Secretary and his staff nevertheless must have concluded that the new facility was needed and would not adversely affect other South St. Paul meat packing companies. We are not now inclined to usurp the functions of the Secretary of Commerce in this regard without the benefit of a final and complete hearing.

In addition to the plaintiffs' failure to demonstrate a reasonable probability of success at trial, they have also failed to make an adequate showing of what immediate and irreparable harm will be suffered by them should their motion be denied. Plaintiffs merely assert that the result of adding a new meat packing facility will be to reduce the number of cattle available to the existing plants. We find this assertion to be somewhat conjectural in light of the evidence that the supply of cattle in the South St. Paul market area may be increasing and insufficient to establish the requisite showing of immediate irreparable injury, a burden which the moving party must sus-

tain. See Foundry Services, Inc. v. Beneflux Corp., 206 F.2d 214 (2nd Cir. 1953).

Further, there is a possibility that Packerland will encounter some injury if the preliminary injunction is granted. According to the affidavit of S. W. Frankenthal, President of Packerland Packing Co., each day of delay in utilizing the funds from the loan results in increased construction costs and loss of future profits and business development to his company.

Finally, plaintiffs make no showing that the public interest will be adversely affected if the preliminary injunction is not granted. Indeed, the public interest may be enhanced by Packerland's proposed project in that a new plant may create additional jobs in what is now described as an economically distressed area. On this ground alone the application for the preliminary injunction might be denied. See Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944); Tennessee Valley Authority v. Tennessee Electric Power Co., 90 F.2d 885 (6th Cir. 1937), cert. denied, 301 U.S. 710, 57 S.Ct. 945, 81 L.Ed. 1363 (1937); Citizens Committee for Hudson Valley v. Volpe, *supra*.

Defendant Packerland Packing Company's motions to set aside service of process and for a change of venue, and plaintiffs' motion for a preliminary injunction are

Denied.