CROSSMAN et al., Respondents v. CONTRACTORS RIGGING
AND ERECTION et al., Appellants

(198 N.W.2d 51)

(File No. 10803. Opinion filed May 23, 1972)

**Gunderson, Farrar, Aldrich, Warder & DeMersseman,** Rapid City, for defendants and appellants.

**Frank Henderson** and **Costello, Porter, Hill, Banks & Nelson,** Rapid City, for plaintiffs and respondents.

WOLLMAN, Judge.

The four plaintiffs named in the title of this case brought separate actions against Contractors Rigging and Erection (Contractors Rigging) and Thomas Pass (Pass) to foreclose mechanics liens. Defendants' property was attached in each of the actions. The actions were consolidated for trial and appeal by stipulation.

Contractors Rigging, a California corporation the sole stockholder, director and officer of which is Thomas Pass, was the successful bidder to the United States Government on a $500,000 contract to remove personal property at three missile sites located in the counties of Custer, Meade and Pennington, State of South Dakota. Pursuant to the terms of this contract, Contractors Rigging was to acquire title to certain items of personal property at the missile sites after first removing and delivering to the United States Government items of personal property referred to as "government save items." Plaintiffs performed labor and furnished services and equipment to Contractors Rigging in connection with the removal of some of this personal property during the period from August 1, 1962 to January 14, 1967. It was stipulated at trial that each of the plaintiffs had contracted with an agent of Contractors Rigging who had authority to enter into contracts for the type of work that was to be performed by each of the plaintiffs. Upon Contractors Rigging's failure to pay the full amount due, plaintiffs brought actions to foreclose the mechanics liens which had been filed in the several counties where plaintiffs had furnished the work, labor, equipment and materials at the missile sites. Summons, complaint, undertaking, writ of attachment and notice of levy were served during the period from February 25, 1967 through March 9, 1967 on one Lou Ponzuric as managing agent of Contractors Rigging. No papers were ever served on Pass individually.

Defendant Pass appeared specially on March 8, 1967 and moved to dismiss, dissolve and discharge the attachments and quash the notice of levy on the ground, inter alia, that the facts alleged as grounds for attachment in plaintiffs' affidavits were false.[1] A hearing on this motion was held before the Hon. George Lampert on March 13, 1967. No order was entered until January 8, 1968, when an order was entered by Hon. Thomas Parker denying the motion.

On April 7, 1967 both defendants caused to be executed and filed a dissolution and release bond pursuant to SDCL 21-17-26 and moved the court to release the property which was the subject of the attachments. An order was entered the same day by Judge Lampert discharging the writs of attachment and directing the clerk of courts to issue his warrants dismissing the warrants of attachment.

On April 15, 1967 defendants' motion to dismiss plaintiffs' complaints for lack of jurisdiction and for failure of the complaints to state a cause of action were argued before Judge Lampert. An order was entered on January 8, 1968 by Judge Parker dismissing plaintiffs' complaints for foreclosure of the mechanics liens and allowing plaintiffs to file amended complaints.

Amended pleadings were filed and the actions were consolidated and tried to the court without a jury on January 9, 1968. On September 11, 1968, the court entered judgments in favor of the plaintiffs against both defendants.

Defendants' first contention on appeal is that the court lacked jurisdiction over Contractors Rigging because no service of the summons was made on any officer or managing agent of the corporation. SDCL 15-6-4(d) (2) provides the following method of personal service of a summons on a foreign private corporation:

---

1. The motion also asked that the attachments be reduced on the ground that plaintiffs' claims totaled only a few thousand dollars while the property attached had a value in excess of $600,000. Contractors Rigging did not join in this motion nor did it make a similar motion of its own.

"If the action be against a foreign private corporation, on the president or other head of the corporation, secretary, cashier, treasurer, a director or managing agent thereof; but such service can be made as to a foreign corporation only when it has property in this state, or the cause of action arose therein, or when such service shall be made within this state personally upon the president, treasurer, secretary, or authorized agent for the service of process;"

There is no question but that Contractors Rigging had property in the state and that the causes of action arose within the state. Thus there is no dispute over the fact that Contractors Rigging was "present" within the State of South Dakota for the purpose of securing in personam jurisdiction. The only question is whether Lou Ponzuric was a managing agent of Contractors Rigging as that term is used in SDCL 15-6-4(d) (2). SDCL 15-6-4(d) (2) is in many respects similar to Rule 4(d) (3) of the Federal Rules of Civil Procedure. The federal courts have given the term "managing agent" broad interpretation. If it is determined that the foreign corporation is doing sufficient business within the state so as to subject it to in personam jurisdiction, the person in charge of the activities that are found to constitute doing business within the state usually is held to be an agent upon whom process can be served. 4 Wright and Miller, Federal Practice & Procedure, § 1103, p. 391; 2 Moore's Federal Practice § 4.22(2), p. 1122; Lone Star Package Car Co. v. Baltimore & Ohio Ry. Co., 5 Cir., 212 F.2d 147; Gottlieb v. Sandia American Corporation, 3 Cir., 452 F.2d 510.

The evidence showed that Lou Ponzuric was employed by Contractors Rigging in 1966 on the missile site jobs. He admitted signing rental agreements on behalf of Contractors Rigging and testified that everything he purchased was purchased through Contractors Rigging. At the time papers were served on Ponzuric by the deputy sheriff of Custer County, Ponzuric said, "You can't serve them on me; I'm not a corporation officer," whereupon plaintiffs' attorney asked Ponzuric if he was the managing agent or in charge. Mr. Ponzuric replied in the affirmative whereupon the attorney said, "We're serving these on the managing agent,"

to which Ponzuric replied, "All right." At trial Ponzuric did not deny making these statements; he testified that he did not remember making them.

Ponzuric testified that he returned to California in November of 1966 and came back to South Dakota in February of 1967, at which time, according to his testimony, he was employed on and about the missile sites by Thomas Pass doing business as Contractors Rigging and Erection. He denied being an employee of Contractors Rigging and Erection, a California corporation, during the year 1967. When asked on cross-examination whether there was any question in his mind that Contractors Rigging and Erection was the same as Contractors Rigging and Erection, the corporation, and that both businesses were operated by Thomas Pass, Ponzuric replied "I don't know his business, sir. I don't know," this in contrast to his earlier insistence that he was employed in 1967 only by Thomas Pass as an individual doing business as Contractors Rigging and Erection. At the conclusion of this testimony, the trial court denied the motion to dismiss for lack of service of process and stated:

"The Court in this connection finds that Mr. Ponzuric was a managing agent for the corporate defendant, Contractors Rigging and Erection Company, it being apparent from his testimony that he understood that he was to act in that name and the business was being conducted in that name on behalf of Mr. Pass and Mr. Pass being an officer of it;     *     *     *  "

We believe that the trial court's finding is amply supported by the evidence. The trial court could quite properly have determined that Ponzuric's spontaneous admission that he was managing agent of Contractors Rigging at the time the papers were served upon him in 1967 was a more correct statement of the realities of the situation than was his attempted explanation at the trial in 1968 that he was somehow working only for Thomas Pass as an individual in 1967 on the same project on which he had directed the activities of Contractors Rigging a few short months earlier. We think that the instant case is somewhat similar

to the case of Van Hoven Company v. Stans, D.C., Minn., 319 F. Supp. 180, wherein the court upheld service with the observation that:

" * * * the pleadings, records and affidavits reflect that Wisneiski advised the United States Deputy Marshal responsible for making service that he was the office manager and he in fact appeared to be the agent in charge of Packerland's Green Bay headquarters in the absence of company officers. * * *

"It is sufficient to satisfy the requirements of Rule 4(d) (3) that a responsible person who declared himself to be in charge of the office was served, particularly where there is no showing that any technical errors allegedly committed in serving the summons and complaint were prejudicial to the defendant." 319 F. Supp. 180, 182.

▆ Even if we assume that the mere admissions of the person served are not sufficient to determine his status as managing agent, the evidence in this case is sufficient to support the determination that Ponzuric was in fact the managing agent of Contractors Rigging at the time service was made upon him.

The trial court took notice of the fact that on March 3, 1967 Pass filed with the clerk of courts of Pennington County, South Dakota, a certificate of fictitious name wherein he stated that he was the sole stockholder, director, and officer of Contractors Rigging and Erection, a California corporation, that he was the sole owner of any and all business done by the corporation, and that he was operating in South Dakota as Thomas Pass doing business as Contractors Rigging and Erection, a California corporation. The certificate also stated that Pass had appointed Lou Ponzuric as his agent for service of process within the State of South Dakota.

Whatever self-serving declarations Pass and Ponzuric may have made concerning the nature of the legal entity which Pass utilized in carrying on his business in South Dakota, it is signific-

ant to note that as far as the federal government was concerned the contract was with Contractors Rigging and Erection, a California corporation, and there is no evidence in the record that any other legal entity ever succeeded Contractors Rigging on the contract. Whatever motives Pass may have had for claiming that he was carrying on his business in South Dakota in 1967 as an individual doing business as Contractors Rigging and Erection, the fact remains that the contracts with the individual plaintiffs were entered into by Contractors Rigging in 1966 and there is no record evidence that there was any transition in the completion of the contracts from Contractors Rigging to Pass as an individual, other than the certificate of fictitious name signed and filed after suit had been commenced by plaintiffs.[2]

In summary, then, the evidence supports a finding that Ponzuric was a managing agent of Contractors Rigging at the time service was made upon him in 1967. Decisions of this court have upheld service under circumstances in which the managing agent's activities within the state on behalf of the defendant corporation were not substantially greater than those of Ponzuric in the instant case. Foster v. Charles Betcher Lumber Co., 5 S.D. 57, 58 N.W. 9; Christiernson v. Hendrie & Bolthoff Mfg. & Supply Co., 26 S.D. 519, 128 N.W. 603; Brewster v. F. C. Russell Co., 78 S.D. 129, 99 N.W.2d 42. See Annot., 17 A.L.R.3d 625.

Defendant Pass contends that the court lacked jurisdiction over him because no service of process was ever made upon him. The trial court found that by presenting the dissolution and release bond on April 12, 1967, Pass impliedly represented that he was subject to the jurisdiction of the court in his individual capacity by proper service of process, knowing that such an impression would be conveyed to the trial court. The court further held that it had relied on such impression in entering an order approving

---

2. During argument counsel for Pass said that Pass did business within the state in 1967 as an individual because Contractors Rigging was not qualified to do business within the state as a foreign corporation, such qualification not being required in connection with the work on the contract with the United States Government. In response, plaintiffs' counsel characterized the purported transition from corporate to individual activity as, "Kind of like a shell game, only the shuffling is done after the selection is made."

the bond and releasing the property held under the writ of attachment and concluded that Pass was estopped from denying the jurisdiction of the court over him in his individual capacity.

■     While there is authority to the contrary, we believe the better rule to be that which holds that the giving of a statutory bond to secure the release of attached property does not operate as a general appearance by a defendant and is not a waiver of jurisdictional defenses. 5 Am.Jur.2d, Appearance, § 29. We note that SDCL 21-17-26 provides that a defendant may file an undertaking with the sheriff to secure the release of property from attachment. SDCL 21-17-27 provides that the sheriff shall give written notice of the filing of the undertaking to plaintiff's attorney. SDCL 21-17-28 provides that if no exceptions are taken by plaintiff to the sureties within three days after receiving notice, the clerk shall issue to the sheriff a dismissal of the warrant and the sheriff shall deliver the attached personal property to the defendant. This statutory procedure appears to require no judicial intervention as a condition of securing the release of property from an attachment. "In giving the bond the defendant does nothing in any way related to the issue in the suit, or having in any respect to do with the jurisdiction of the court over the cause of action or the exercise of its jurisdiction." 5 Am.Jur.2d, Appearance, § 29, p. 503.

Plaintiffs contend that the motion made by Pass on March 8, 1967 to dismiss, dissolve and discharge the attachments constituted a general appearance by Pass in the action and had the effect of waiving any question as to jurisdiction, citing People's State Bank of Bradley v. Nordness, 50 S.D. 216, 208 N.W. 984. This contention was apparently not submitted to the trial court and did not form the basis of the trial court's decision that it had jurisdiction over Pass as an individual.

In People's State Bank of Bradley v. Nordness, supra, the court said in part:

"Respondent joined with the other defendant in a motion to dissolve the attachment on the ground that the allega-

tions in the affidavit upon which the attachment issued were false. This motion called upon the court to act judicially upon the merits involved in the controversy; in other words, respondent voluntarily submitted to the jurisdiction of the court. While in form their appearance was special, the nature of the relief asked was such as could be granted only by a court having jurisdiction of the parties, and therefore their appearance must be held to be general, and respondent cannot claim the benefit of a special appearance in her motion to quash the service of the summons." 208 N.W. 984.

We believe that the holding in People's State Bank of Bradley v. Nordness is contrary to the weight of authority and we conclude that the decision should no longer be followed. We believe that the cases of State ex rel. Auchincloss, Parker & Redpath, Inc. v. Harris, 349 Mo. 190, 159 S.W.2d 799, and Stecker v. Snyder, 118 Colo. 153, 193 P.2d 881 are representative of the better rule that an attack on or proceedings directed to the attachment are separate and distinct from the main action. See also 5 Am. Jur.2d, Appearance, §§ 21 and 26; 6 C.J.S. Appearances § 12m; Insurance Co. of North America v. Kunin, 175 Neb. 260, 121 N.W. 2d 372; Conner v. Southern, 186 Neb. 164, 181 N.W.2d 446.

We also believe that our holding is in accord with the spirit of the Federal Rules of Civil Procedure 12(b), (h) and SDCL 15-6-12(b), (h), under which there is no longer any distinction between special and general appearances and under which no defense or objection concerning lack of jurisdiction or insufficiency of service of process is waived by being joined with one or more other defenses or objections in a responsive pleading or motion, subject to certain exceptions. It has been stated that "* * * the emphasis no longer is on the nature of the appearance, but rather upon the precise character of the objection or defense interposed." 5 Wright and Miller, Federal Practice & Procedure, § 1344, p. 524.

Plaintiffs' contention on appeal that defendant Pass waived his jurisdictional defenses by filing a counterclaim in the Rapp Bros. action was apparently neither presented to nor considered by the trial court. Pass withdrew the counterclaim by way of an

amended answer after a reply had been served. While the record does not contain a stipulation for dismissal, all of the parties apparently treated the amended answer as a voluntary dismissal of the counterclaim by Pass. We think the following language from Neifeld v. Steinberg, 3 Cir., 438 F.2d 423, is instructive:

> "Since Neifeld had not served a responsive pleading to Steinberg's counterclaim, under Rules 41(a) and (c), [Federal Rules of Civil Procedure] Steinberg had the right to voluntarily dismiss his counterclaim without order of court. Thus, it cannot be forcefully argued that Steinberg utilized the District Court's facilities in any meaningful sense, for he was entitled to dismiss his counterclaim on his own without petitioning the court for approval." 438 F.2d 423, 431.

■ We conclude that Pass did not waive his jurisdictional defenses by filing a counterclaim in view of his subsequent withdrawal of the counterclaim; thus we need not consider the question whether the filing of a compulsory counterclaim constitutes a waiver of jurisdictional defenses. On this question, see Hasse v. American Photograph Corp., 10 Cir., 299 F.2d 666; Dragor Shipping Corp. v. Union Tank Car Co., 9 Cir., 378 F.2d 241; Neifeld v. Steinberg, supra; 5 Wright and Miller, Federal Practice & Procedure, § 1397, p. 876.

We conclude, then, that the trial court was correct in holding that valid service had been made upon a managing agent of Contractors Rigging & Erection, a California corporation, but that the trial court erred in holding it had jurisdiction over defendant Pass as an individual. Accordingly, the judgments in favor of the four plaintiffs against Contractors Rigging & Erection, a California corporation, are affirmed, and the judgments in favor of the four plaintiffs against Thomas Pass, an individual, are reversed.

HANSON, P. J., and BIEGELMEIER and WINANS, JJ., concur.

DOYLE, J., not having been a member of the court at the time of argument, took no part in this decision.